# THE UNITED STATES, EX REL. SHEEHY

## v.

## JOHNSON.

INTOXICATING LIQUORS, SALE OF; SOLDIERS' HOME; ONE MILE
LIMIT.

The one mile limit prescribed by the act of Congress of February 28,
1891 (26 Stat. 797), entitled "an act to prevent the granting of
liquor licenses within one mile of the Soldiers' Home" in this
District, and providing that "no license for the sale of intoxi-
cating liquors at any place within one mile of the Soldiers'
Home property in the District of Columbia shall be granted,"
is to be measured in a straight line on a level plane from the
outside walls of the inclosure, and not by the shortest avenue
of travel between the nearest entrance of a place of sale and
the Home.

No. 734. Submitted December 7, 1897. Decided January 4, 1898.

HEARING on an appeal by the relator from a judgment
dismissing a petition for a writ of *mandamus*. *Affirmed.*

The COURT in its opinion stated the case as follows:

The relator, Henry Sheehy, applied to the excise board
of the District of Columbia, to whose jurisdiction the sub-
ject-matter is committed by law, for a license to carry on
the wholesale liquor business at No. 2038 Eleventh street,
northwest, in the city of Washington, and being refused, he
instituted the present proceedings by filing his petition for
a writ of *mandamus* to require the excise board further to
act upon his application. The refusal of the board, as it
appears, to grant the license or to act further upon the appli-
cation, was based upon a construction of the law applicable
to the case different from that claimed by the relator to be
the true construction.

An act of Congress of February 28, 1891 (26 Stat. 797),

entitled "An act to prevent the granting of liquor licenses within one mile of the Soldiers' Home," in the District of Columbia, and which has the merit of being one of the shortest statutes in the records of Congress, being contained within four lines, provides "that on and after the passage of this act no license for the sale of intoxicating liquors at any place within one mile of the Soldiers' Home property in the District of Columbia shall be granted." The place of business of the relator, No. 2038 Eleventh street, northwest, in the city of Washington, at which he proposed to carry on the wholesale liquor business, and for which he desired the the proposed license, is greatly within one mile of the Soldiers' Home property, if the measurement be made in a straight line on a level plane from the outside walls of the inclosure, as the Board of Excise has held it should be made; but it is beyond the one mile limit from the Home, if the measurement is to be made, as contended by the relator, between the nearest entrance to each place by the shortest avenue of travel between the two places. And it will be still further beyond the limit, if, as further contended by the relator, the initial point of measurement should be taken at the Soldiers' Home buildings, and not at the gate of the inclosure. The substantial question in the case, therefore, is as to the proper method of measurement.

The members of the Excise Board made return to the rule served upon them in pursuance of the petition filed by the relator; and upon the petition and return, and argument thereon by counsel, the court below refused the writ of *mandamus* and dismissed the relator's petition. From that action the relator has prosecuted the present appeal.

*Mr. E. E. Meredith* and *Mr. C. Maurice Smith* for the appellant:

1. Where executive officers refuse to act in a case in which the law requires them to act they will be compelled by *mandamus* to do so. *United States* v. *Raum*, 135 U. S. 200;

*Hamilton Co. Coms.* v. *State,* 26 Ohio St. 364; *Supervisors* v. *United States,* 18 Wall. 71; Merrill on Mandamus, Secs. 13 and 32; *Com.* v. *Cochrane,* 6 Binn. 456.

If a tribunal decline to consider a case under the mistaken conclusion that it has no jurisdiction thereof, *mandamus* will issue to compel it to consider the matter. · *In re Parker,* 120 U. S. 737; *State* v. *McLaughlin,* 75 Mo. 358; *Beguhl* v. *Swan,* 39 Cal. 411; Merrill on Mandamus, Sec. 39. Where respondents give the reasons for their action, which reasons are adjudged invalid, the writ will issue. Merrill on Mandamus, Sec. 39; *King* v. *London,* 3 Barn & Ad. 255. If a tribunal decline to hear a case · upon a preliminary question, which is purely a matter of law, *mandamus* will issue if the tribunal has misconstrued the law. *Castello* v. *Circuit Court,* 29 Mo. 259; Merrill on Mandamus, Sec. 46.

2. · It is an established rule of construction that statutes which are *in pari materia* should be construed together and effect given to them all. Am. & Eng. Encyc. L., Vol. 25, p. 311; *Alexander* v. *Alexandria,* 5 Cranch, 7; *United States* v. *Freeman,* 3 How. 564; *Converse* v. *United States,* 21 How. 463; *United States* v. *Marble,* 2 Mackey, 12. The sixteenth section of the act of 1893, and the act of 1894, in relation to the sale of liquor in the District of Columbia, have expressly defined the measurement of distances in a similar case, and, therefore, may be looked to for light upon the subject. The act of 1893 and that of 1894 furnish a legislative interpretation of the act of 1891, and since section 16 of the act of 1893 and the amendment thereto is within the reason and spirit of the act of 1891, it is to be construed as a part of that act. *United States* v. *Freeman,* 3 How. 564.

Congress having expressly declared what constitutes a legal measurement between a saloon and certain places, that measurement is the only one to be considered in regulating the distance between the Soldiers' Home and the relator's place of business.

D. C.]                    Argument of Counsel.

*Mr. S. T. Thomas,* Attorney for the District of Columbia, and *Mr. A. B. Duvall,* Assistant Attorney, for the appellees:

1. The Excise Board was without jurisdiction to issue the relator a liquor license. The writ of *mandamus* will not be issued where the facts are of a character to establish a want of jurisdiction. *Bash* v. *Taft,* 137 U. S. 458; *People* v. *Com'rs,* 27 Barb. (N. Y.) 94; Merrill on Mandamas, Sec. 111. Nor will it issue to compel one to do that which he has been enjoined from doing. *People* v. *Ulster, etc.,* 30 Hun, 146. It is incumbent upon the relator to show not only that the respondent has failed to perform the required duty, but that the performance thereof is due from him at the time of the application. *State* v. *Gracey,* 11 Nev. 233; *State* v. *Carney,* 3 Kan. 88 ; *State* v. *Dubuclet,* 22 La. An. 298; *Com'rs.* v. *Com'rs.* 20 Md. 449. In this case the Excise Board considered the relator's application ; they investigated the matter of distance between the proposed liquor location and the Soldiers' Home property, and finding that it was within one mile of that institution, measured by air line, they refused further to consider the application for want of jurisdiction.

2. Distance, under the act of February 28, 1891, must be measured in a straight line. It is to be presumed that Congress intended the most convenient and certain mode of measurement; and that is unquestionably a straight line on a horizontal plane, between the nearest point of the Soldiers' Home property and the proposed liquor location. Endlich on Stats., Sec. 395 ; 5 Am. & Eng. Encyc. L. 704 and cases; *In re Liquor Locations,* 13 R. I. 733; *Com.* v. *Heaganey,* 137 Mass. 574; *Com.* v. *Jenkins,* Ibid. 572; Black on Intoxicating Liquors, Sec. 435; *Com.* v. *Jones,* 142 Mass. 573 ; *Myers* v. *Baker,* 120 Ill. 567; *Kramer* v. *Marks,* 64 Pa. Stats. 157; *Boyd* v. *State,* 12 Lea. 687.

3. The doctrine *in pari materia* is not applicable to this case. Here we have two acts of Congress, enacted at different times, one prohibiting the granting of licenses to sell intoxicating liquors within one mile of the Soldiers' Home property,

and the other declaring that no such license shall be granted to conduct such business outside of that territory, within 400 feet of a school or church. There is no uncertainty about the language of either act. The latter (Sec. 21) is expressly declared to be in lieu of, and as a substitute for, all existing laws and regulations in relation to the sale of intoxicating liquors in this District, and to repeal all laws inconsistent with it, "except such laws as are applicable to the sale of liquor within one mile of the Soldiers' Home." The rule that statutes in *pari materia* are to be treated as one law is not absolute. It is only resorted to in cases of doubt, and is never applied where a statute is plain and unambiguous. *State* v. *Cram,* 16 Wis. 347; *Goodrich* v. *Russell,* 42 N. Y. 184.

4. Contemporaneous construction of the statute of February 28, 1891, should control. *Pennoyer* v. *McConnaughy,* 140 U. S. 23; *United States* v. *Hill,* 120 U. S. 122; *United States* v. *Philbrick,* 120 U. S. 52; *Heath* v. *Wallace,* 138 U. S. 582.

Mr. Justice MORRIS delivered the opinion of the Court:

1. There is a question which we may perhaps regard as a preliminary one, although it is also in a certain sense of fundamental importance. In the argument before us on behalf of the relator it is urged that the Excise Board has never considered the relator's application at all or acted upon it; and that what the relator desires is action upon his application, even though such action may eventuate in its rejection. This argument is in direct antagonism to the statements of the relator's petition, in which the relator distinctly avers that the Excise Board did consider his application, and rejected it only after consideration, although, as he claims, upon a mistaken view of the law. And it is further in direct antagonism to the prayer of the petition, which seeks that the Excise Board should be required further to consider the application under instructions to apply a rule of measurement different from that which they had applied. The argument is based upon an expression con-

tained in the return made by the board, that "said application was rejected by them for want of jurisdiction, the proposed liquor location being within one mile of the Soldiers' Home property in the District of Columbia." From this the relator would desire it to be inferred that they refused to take jurisdiction of the application, or to consider it at all. But plainly this is not the proper meaning of the return, or the proper inference to be drawn from it. The return shows very conclusively that the Excise Board fully considered the relator's application, and rejected it on the ground that the proposed place of business was within the limits of territory for which the act of Congress prohibited the issue of any licenses. Whether the ground for refusal is tenable in law, is another question; but certainly it can not with any great reason be contended that the Excise Board in this instance has not considered the relator's application and acted upon it. And whether in view of the provisions of the law which makes the action of the Excise Board *final and conclusive* upon all applications for license to sell intoxicating liquors, the writ of *mandamus* could in any event produce any different result, may be a serious question; but that question we are not now called upon to decide.

2. The real question in this case is whether the Excise Board has not adopted an erroneous method of measurement contrary to that provided by the law, and whether it has not therefore, to the extent of the error, mistaken the true meaning of the law and the true extent of its own jurisdiction to grant licenses. For the determination of this question an examination of the statutes on the subject is necessary.

Besides the act of February 28, 1891, already cited, there are three other enactments that are assumed to have a bearing upon the matter, and that are claimed by the relator to control it. First and principal of these is what may be denominated the general excise act now in force in the District of Columbia, and which is an act of Congress of March 3, 1893

12 App. D. C.—8

(27 Stat. 563), entitled "An act to regulate the sale of intoxicating liquors in the District of Columbia," in which Congress undertook to legislate on the whole subject of the liquor traffic within this jurisdiction. By this act an Excise Board was created, composed of the Commissioners of the District, which was vested with exclusive authority to consider and take action upon all applications for license to sell intoxicating liquors, and whose action on such applications it was provided should be final and conclusive. By the sixteenth section of the act it was provided that no license for the sale of liquor should be granted for any place "within four hundred feet of a public schoolhouse, private school, or house of religious worship, except in such places of business as may have been located previous to the erection or occupation of such schoolhouse, private school, or house of religious worship, owned or occupied by the District of Columbia, *measured between the nearest entrance to each by the shortest route of travel between such place of business and the schoolhouse, private house, or place of religious worship.*"

And in the twenty-first section of the act it was provided as follows: "That this act shall be in lieu and as a substitute for all existing laws and regulations in the District of Columbia in relation to the sale of distilled and fermented liquors in the said District, and that all laws and parts of laws inconsistent with this act, except such laws as are applicable to the sale of liquor within one mile of the Soldiers' Home, be, and they are hereby, repealed."

Next we have an act of May 11, 1894 (28 Stat. 75), the main purpose of which was to remove the glaring incongruities of the act of March 3, 1893, section 16; although it added some other provisions not important to be stated in this connection. The sixteenth section of the act of 1893, as amended by this later enactment, reads as follows:

"That license for any of the purposes specified in any section of said act shall not be granted to any person to conduct such business within four hundred feet of a public school-

house, private school, or house of religious worship, measured
between the nearest entrance to each by the shortest course
of travel between such place of business and any schoolhouse,
private school, or house of religious worship, except in such
places of business as were located and licensed at the date of
said act or previous to the erection or occupation of such
schoolhouse, private school, or place of religious worship:
*Provided,*" etc.

And lastly we have, under date of August 14, 1894 (28
Stat. 282), an act mainly dealing with the matter of the
assessment of real estate for taxation, but in its fifteenth and
last section providing that the board of assessors therein
created should also constitute thereafter the Excise Board of
the District, instead of the Commissioners, to carry into
effect the provisions of the act of March 3, 1893.

The argument on behalf of the relator is that the act of
February 28, 1891, is to be read with the acts of 1893 and
1894 as being *in pari materia*; and that, when they are so
read together, the method of measurement provided in the
later acts with reference to the computation of distance
from churches and schoolhouses, is to be understood as
applicable also to the matter of the computation of the dis-
tance from the Soldiers' Home. It is claimed that the
purpose to be subserved in both cases is the same, the pres-
ervation of the morals of the inmates or frequenters of the
institutions; and that, the purpose being the same, the
provisions of the later statutes must be assumed to have
been intended to apply also to the earlier enactment. More-
over, it is contended that, by the expression "the Soldiers'
Home property," used in the act of 1891, no more is meant
than the "Soldiers' Home building." The words used in
the title of the act being merely "the Soldiers' Home."

With reference to this last contention, which we may
notice first, it is very plain that it is wholly fallacious. It
is very well settled that the title of an act is no part of the
act, although it may be resorted to for the explanation of

obscure or doubtful expressions in the body of the act. But there are here no doubtful or obscure expressions, no terms of dubious import. Language more plain, more unmistakable in its significance, could not well have been chosen. Every one in the community knows what is meant by "the Soldiers' Home property." Every one knows that by those terms, the whole inclosure, and not merely the buildings, are intended to be designated. And it would be a forced, unnatural and unjustifiable construction, under the circumstances, that would restrict the application of the phrase to the buildings alone. The whole inclosure is the Soldiers' Home property. Its inmates live all over it. The purpose of its establisment is for them to wander through it at will and pass their declining years in roaming through its peaceful shades. Even if the expression used in the body of the act were identical with that used in the title we would not be disposed to give it a more restricted meaning than we do the phrase which is actually used, in view of the evident purpose and intention of the act. For that purpose, which is not entirely identical, as is claimed, with the purpose of the analagous restriction in regard to schoolhouses and churches, was to remove from the inmates of the Soldiers' Home, as far as could reasonably be done, the occasion for a temptation with which experience tells us they are only too prone to fall. A construction which would limit the meaning of the words used in the act, or the intention of Congress in framing it, to the buildings, which are all, or nearly all, at the extreme north end of the property, would justify the opening of a place for the sale of intoxicating liquors in front of the south gate of the inclosure and in such immediate proximity to it as to frustrate most effectually the plain purpose of Congress. But we need not enlarge on this point. We must do counsel for the relator the justice to say that they do not insist very strenuously upon it. Their insistance is upon the real question in the case, the method of measurement. And this we now proceed to consider.

It is conceded on behalf of the relator, and it could not well be doubted, in view of the practically unanimous current of authority upon the point, that, if the act of February 28, 1891, stood alone, the mile limit there prescribed should be measured in a straight line upon a level plain. The cases may be found cited in volume 5, of the American and English Encyclopedia of Law, page 704. But by the concession of the relator we are relieved from further consideration of them, and from further consideration of the question. We must take it to be the general rule, that, unless some other mode of measurement is prescribed or indicated, distance is always to be measured in a straight line, on a horizontal plane. And so, when Congress, in the act of February 28, 1891, prescribed a limit of one mile from the Soldiers' Home property, and gave no direction or indication as to the mode in which the measurement should be made, as it did specifically in the acts of 1893 and 1894, to which reference has been made, its silence on that point is the equivalent to all intents and purposes of a direction that the measurement should be in accordance with the general rule of the common law. No contemporaneous construction, practice, or usage by the Excise Board or by the officials of the District of Columbia was required to establish that rule. Very considerable usage to the contrary would have been required to overthrow it.

Now, it being conceded that, if application had been made by the present relator at any time between February 28, 1891, and March 3, 1893, for a license for the sale of intoxicating liquors at the place now proposed, the application should and must necessarily have been refused under the law, how comes it that the act of March 3, 1893, or the amendment thereof of May 11, 1894, wholly reverses the rule? Is it by providing specially a different rule of measurement in another class of cases, where the conditions are wholly different, and where the special purpose to be subserved is entirely dissimilar, although falling within the

same general category of public morality? This second class of cases has reference to a crowded and populous city, where propinquity is best and most usually measured by the facility of access, and where the danger against which it is sought to guard is not so much the gratification of the passion for drink as the scandal of evil example and the public exposure of human weakness and human depravity. It would seem that the fact that Congress provided a special mode of measurement in the one case, and remained silent as to the other, when the other case was also before it and was distinctly and specially in the legislative mind at the time, as we would in any event have to regard it as being, if the relator's contention is correct that these statutes should all be read together as one statute, should be taken rather as justifying the inference that Congress did not intend this special method of measurement to apply in the other case. If it had so intended, it would have been very easy and most natural to say so. The fact that it did not say so, is proof that it did not so intend. Moreover, the special direction in the acts of 1893 and 1894 with reference to the method of measurement from churches and schoolhouses is so interwoven with that special subject, that only by a violent dislocation of the single sentence in which it is all contained could we derive from it a rule that we would be justified in applying to anything beyond the special matter there involved.

But the conclusive answer to the argument in behalf of the relator is afforded by the last section of the act of March 3, 1893, which provides in express terms for the repeal of all laws inconsistent with the act, "*except such laws as are applicable to the sale of liquor within one mile of the Soldiers' Home.*" The only law applicable to the sale of liquor within one mile of the Soldiers' Home is that already cited of February 28, 1891. So far as that law is inconsistent with the act of 1893, it is not repealed, but it is expressly continued in force. The inconsistency may possibly

be two-fold: 1st. In excluding a certain portion of the District of Columbia from the operation of [the general excise law; 2d. In providing a different method of measurement of distance from that provided in the later law. The first has no bearing upon the question now under consideration; but the second is plainly and palpably a provision that is preserved by the second act. We have seen, and it has been conceded, that the mode of measurement prescribed by the act of 1891, which, by implication, is the common law mode of measurement, is inconsistent, if that act stands alone, with the mode of measurement prescribed by the acts of 1893 and 1894; and if it is inconsistent, it is necessarily and in express terms preserved and perpetuated by the act of March 3, 1893. We can see no possible escape from this conclusion.

It is quite clear to us that it was the purpose of the act of Congress of February 28, 1891, to establish the belt of territory surrounding the Soldiers' Home property on all sides, by means of straight lines radiating on a horizontal plane from the outer wall of the enclosure of the property, such belt being a mile wide at every point, within which no license whatever should be granted for the sale of intoxicating liquors. And it is equally clear to us that the acts of March 3, 1893, and May 13, 1894, made no change and were intended to make no change in the configuration of that belt.

From this it necessarily follows that, in our opinion, the Excise Board was correct in the rule of measurement which it adopted with reference to the relator's application; and that, therefore, under the law, it could not properly do otherwise than reject the application and refuse to grant the license.

The writ of *mandamus* was properly refused by the court below; and the order of refusal must be *affirmed, with costs. And it is so ordered.*