**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0015n.06

**No. 08-4306**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jan 11, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| AMY L. SENZARIN, | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ABBOTT SEVERANCE PAY PLAN FOR | ) | OHIO |
| EMPLOYEES OF KOS PHARMACEUTICALS; | ) | |
| DIVISIONAL VICE PRESIDENT, | ) | |
| | ) | OPINION |
| *Defendants-Appellees.* | ) | |

Before:  KENNEDY and ROGERS, Circuit Judges; HOOD, District Judge.[*]

**HOOD, District Judge**.  In this action brought under the Employee Retirement Income

Security Act, 29 U.S.C. §§ 1001 *et seq.*, Plaintiff-Appellant Amy L. Senzarin contends that

Defendants Abbott Severance Pay Plan for Employees of Kos Pharmaceuticals and the Divisional

Vice President wrongfully denied her claim for severance benefits.  Finding that Defendants' denial

of Plaintiff's claim was not arbitrary and capricious, the District Court upheld the denial of benefits.

For the reasons stated below, we **AFFIRM** the denial of Plaintiff's claim for severance benefits.


**I.  FACTUAL AND PROCEDURAL BACKGROUND**

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

Plaintiff was employed by Kos Pharmaceuticals ("Kos") as a pharmaceutical sales territory manager. On or about December 15, 2006, Abbott Laboratories ("Abbott") acquired Kos. Kos employees became employees of Abbott or one of its subsidiaries. In connection with its acquisition of Kos, Abbott agreed to maintain and administer Kos's severance plan, which was renamed the Abbott Severance Pay Plan for Employees of Kos Pharmaceuticals (the "Plan"). The Plan was administered by Abbott's Divisional Vice President of Employee and Labor Relations.

By the Plan's terms, a participant was entitled to benefits if, and only if, prior to December 16, 2007, his or her employment was: (1) involuntarily terminated, other than for cause; or (2) voluntarily terminated for "good reason." The Plan defined "good reason" to include:

> any change of the Participant's principal place of employment to a location more than . . . in the case of Participants who are sales personnel, 50 miles from the Participant's principal residence immediately prior to December 15, 2006.

(Administrative Record, "AR," at 40). The Plan did not define "principal place of employment," as used in defining "good reason." The Plan Administrator's eventual interpretation of "principal place of employment," along with the methodology used to calculate the mileage from the principal place of employment to Plaintiff's residence, are the basis of the dispute in this action.

On February 28, 2007, Abbott reassigned Plaintiff to the Mansfield, Ohio, territory. Plaintiff resigned from her position as Territory Manager, effective May 1, 2007, citing the distance from her residence to her assigned territory as the reason for her resignation. On April 2, 2007, Plaintiff submitted a claim for benefits, claiming that she voluntarily terminated her position with "good reason" because her principal place of employment was greater than fifty miles from her residence. In support of her claim, Plaintiff included a territory analysis which detailed the driving distances, using Mapquest, to the physicians' offices she would be required to call on in her new territory.

Plaintiff based her distance calculations on her "assigned targeted physicians and the frequency that was required for each physician based upon the number of sales calls." (AR at 53). Based upon Plaintiff's weighted calculations, her "principal place of employment" was more than fifty miles from her residence. Neither the Plan nor the Plan Administrator disputed the accuracy of Plaintiff's calculations, however, the Plan Administrator did not adopt Plaintiff's methodology in defining "principal place of employment" or in calculating driving distances.

On May 21, 2007, Abbott's Severance Committee denied Plaintiff's claim for severance benefits, finding that she had not terminated her employment with "good reason" because her assigned territory was 46.7 or 48 miles from her principal residence.[2] Plaintiff appealed the Committee's decision to the Plan Administrator. On March 10, 2008, the Plan Administrator denied Plaintiff's appeal, finding that because her principal residence was not more than fifty miles from her principal place of employment, she had not voluntarily terminated her employment with "good reason."

In reviewing Plaintiff's appeal, the Plan Administrator recognized that the Plan did not define "principal place of employment" for a sales employee and did not provide a methodology for determining the distance from a participant's principal residence to her principal place of employment. The Plan gave discretion to the Plan Administrator to interpret the terms of the Plan. (AR at 14). The Plan Administrator hired a third-party consultant, ZS Associates, to aid in formulating a uniform method for determining the principal place of employment for sales

---

[2] The consulting firm Abbott hired to calculate the distance between Plaintiff's principal residence and principal place of employment used the geographic center of her zip code as the principal residence, resulting in a distance of 46.7 miles from her principal place of employment. (AR 48, 67). The denial letters Plaintiff received state that the distance was calculated to be 48 miles. (AR 51, 62).

employees and for calculating the distance from an employee's principal place of employment to his or her principal residence.

In order to accommodate the fact that sales employees do not work in a discrete location, the Plan Administrator used a weighted average of where Plaintiff's sales activities took place, termed the "workload center," to determine her principal place of employment. The workload center was calculated by (1) assigning each physician within Plaintiff's sales territory a workload value, defined as the frequency of sales meetings times the volume of sales over a 12-month period; (2) providing a workload total in each zip code included in the sales territory by adding the workload values for all physicians in that zip code; and (3) finding the workload center through the weighted average of all workload values for each zip code. (AR at 50).

The Plan Administrator next decided that the distance between the workload center and Plaintiff's principal residence should be determined by measuring the straight-line earth-arc distance between the two points. The Plan Administrator reasoned that determining the distance "as the crow flies," as opposed to by driving miles, would create a "uniform and straightforward application of the Plan's terms," whereas driving distance could vary depending on the route and method of transportation. Using this method, the Plan Administrator determined that the distance between Plaintiff's workload center and her principal residence was 48 miles. Accordingly, the Plan Administrator upheld the denial of Plaintiff's claim for benefits, finding that the change in her sales territory did not qualify for a "good reason" voluntary termination. Plaintiff timely filed the instant appeal, essentially arguing that the Plan Administrator's decision was arbitrary and capricious because the methodology employed in making the decision was too complex and difficult to understand.

4

## II. ANALYSIS

This Court reviews *de novo* the district court's decision to uphold the denial of benefits. *Cooper v. Life Ins. Co. of N. Am.,* 486 F.3d 157, 164-65 (6th Cir. 2007). Because the Plan gave the Plan Administrator discretion to interpret the terms of the Plan, the denial of benefits is reviewed to determine if the decision was arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Cooper*, 486 F.3d at 164-65.

The Plan states that the Plan Administrator "has the discretionary authority to interpret all Plan provisions and to determine all issues arising under the Plan, including issues of eligibility, coverage and benefits." (AR at 14). Plaintiff concedes that the Plan Administrator had authority to interpret the terms of the Plan; however, she argues, as she did before the district court, that the Plan Administrator's failure to interpret the terms of the Plan as an ordinary person would, renders the denial of benefits arbitrary and capricious. Plaintiff bears the burden to demonstrate that the denial of benefits was arbitrary and capricious. *Rochow v. Life Ins. Co. of N. Am.,* 482 F.3d 860, 865 (6th Cir. 2007).

Under the arbitrary and capricious standard of review, the Plan Administrator's decision should be upheld if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd sub nom. Met. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008). Where there exists any ambiguity in the terms of the Plan, the Court must "grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms," so long as that interpretation is rational. *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995). Even if the Court would not have come to the same conclusion as the Plan Administrator, as long as there is a reasonable basis for the decision,

it must be upheld. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).

As the district court spelled out in a thorough, well-written opinion, the Plan Administrator's decision to deny benefits was not arbitrary and capricious. The Plan did not define the term "principal place of employment" and did not provide a methodology for determining the distance from a Plan participant's principal place of employment to his or her principal residence. The Plan Administrator hired ZS Associates to formulate a method that could consistently be used to determine a sales employee's principal place of employment - a difficult task, given that sales employees travel throughout their assigned territory and do not have a brick and mortar principal place of employment. The Plan Administrator then adopted the method, known as the "workload center," developed by ZS Associates. While the workload center concept is a somewhat complex method for determining a sales employee's principal place of employment, it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn*, 461 F.3d at 666. The workload center approach uses the location of each physician called on, the number of sales calls per year, and the volume of sales to each physician to determine Plaintiff's principal place of employment. This method provides a well-reasoned basis for making a complex determination, and is far from arbitrary.

Similarly, the Plan Administrator's use of straight line earth-arc distance to calculate the miles between Plaintiff's workload center and her principal residence was not arbitrary or capricious. Using straight line distance removes numerous variables from the mileage calculation, including different routes, various methods of transportation, road construction or closure, and personal preference. Straight line earth-arc distance provides a reasoned method for calculating the

6

miles between Plaintiff's workload center and her principal residence.[3]

Plaintiff suggests that the Plan Administrator should have used Mapquest to calculate the distance. While Plaintiff supplied the Plan Administrator with an alternative method of calculation, that method introduces the very ambiguities that using the straight line earth-arc method eliminates. Furthermore, this Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).[4]

Plaintiff cites *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926, 933-34 (6th Cir. 2000), as support for her contention that the Plan Administrator's use of the workload center concept and the use of straight line earth-arc distance were both arbitrary and capricious interpretations of the Plan's terms. The Plan Administrator's interpretations of these terms are consistent with the plain meaning that could be assigned to them by an ordinary person (even though they are not the only such interpretations), so

---

[3]In different contexts, other courts have found it appropriate to use the straight line method or "as the crow flies" in measuring distance between two points. *Sprow v. Hartford Ins. Co.*, 594 F.2d 412, 417-18 (5th Cir. 1979) (holding that 100-mile distance under former Fed. R. Civ. P. 4(f) is to be measured "as the crow flies"); *United States ex rel. Sheehy v. Johnson*, 12 App.D.C. 92, 1898 WL 15581, 6 (D.C. Cir. Jan. 4, 1898) (holding, regarding statutory interpretation, "We must take it to be the general rule, that, unless some other mode of measurement is prescribed or indicated, distance is always to be measured in a straight line, on a horizontal plane."); *Schwartz v. Marriott Hotel Services, Inc.*, 186 F. Supp. 2d 245, 251 (E.D. N.Y. 2002) (noting that 100-mile travel rule of Rule 45 is measured by straight line); *cf. United States v. Johnson*, 46 F.3d 1166 (D.C. Cir. 1995) (joining other circuits and holding that under 21 U.S.C. § 860(a), "a person may be convicted of possessing with intent to distribute crack cocaine within 1000 feet of a school even if the distance by street is over 1000 feet, as long as the straight line distance between the site of the possession with intent to distribute and the school is within 1000 feet").

[4]This conclusion is limited to the facts of this case. For example, if a participant employee serviced an area along the Mississippi River where there are limited crossing points, use of the straight-line earth-arc method might be arbitrary and capricious.

the plan administrator's decision is not arbitrary or capricious. Here, we have at least two possible plain meanings – as measured "as the crow flies" or as measured using any road or the shortest road on the quickest route. The most uniform of these would be the one selected by the Plan Administrator – as the crow flies. Selection of this interpretation is not arbitrary or capricious.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the Plan Administrator's decision to deny Plaintiff's claim for benefits.