*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0055P (6th Cir.)
File Name: 00a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SHELBY COUNTY HEALTH
CARE CORPORATION,
         *Plaintiff-Appellee,*

         *v.*

SOUTHERN COUNCIL OF
INDUSTRIAL WORKERS
HEALTH AND WELFARE
TRUST FUND,
         *Defendant-Appellant,*

TRACY MASON,
                  *Defendant.*

No. 99-5191



Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-02394—Julia S. Gibbons, Chief District Judge.

Argued: December 7, 1999

Decided and Filed: February 15, 2000

Before: JONES, BATCHELDER, and MOORE, Circuit
Judges.

----

**COUNSEL**

----

**ARGUED:**    Allison A. Madan, SLEVIN & HART, Washington, D.C., for Appellant.  Teresa A. McCullough, Memphis, Tennessee, for Appellee. **ON BRIEF:** Allison A. Madan, Lynn A. Bowers, SLEVIN & HART, Washington, D.C., Deborah E. Godwin, ALLEN, GODWIN, MORRIS & LAURENZI, Memphis, Tennessee, for Appellant.  Teresa A. McCullough, Gary C. McCullough, Memphis, Tennessee, for Appellee.

----

**OPINION**

----

KAREN NELSON MOORE, Circuit Judge.  Shelby County Health Care Corporation ("Shelby") brought suit in this employee benefit case against Southern Council of Industrial Workers Health and Welfare Trust Fund (the "Fund") for payment of hospital services rendered to Tracy Mason, a former participant in the Fund.   The Fund's plan administrator, the Board of Trustees, had denied Shelby's claim for benefits on the basis of untimeliness of the claim. The district court denied the Fund's motion to dismiss and sua sponte granted summary judgment to Shelby reversing the Board of Trustees' denial of benefits.  We **AFFIRM** the district court's conclusion on summary judgment that the Board of Trustees' interpretation of the Fund's plan document (the "Plan") regarding when a claim is timely filed is arbitrary and capricious. We **REVERSE** the district court's sua sponte grant of summary judgment to Shelby awarding it the full amount of damages requested and **REMAND** to determine the proper amount of benefits owed under the terms of the Plan.  In addition, we **AFFIRM** the district court's denial of attorney fees to the Fund.

## I.  FACTS AND PROCEDURE

Tracy Mason was struck by a car on June 30, 1995.  Mason was a participant in the Fund at that time.  He was taken to Shelby for medical treatment and signed an assignment of insurance benefits to Shelby for all hospital charges.  Shelby incurred $31,770.22 for these services and billed the Fund for this amount in late July 1995.[1]  After receiving this bill and in accordance with the Fund's established procedures for claims involving potentially liable third parties, the Fund sent Mason a subrogation agreement, which included a questionnaire about the accident, on August 2, 1995; October 31, 1995; November 14, 1995; May 22, 1996; and June 12, 1996.  These letters advised Mason that his claims would not be processed until the Fund received a subrogation agreement with his signature.  On March 6, 1996, Shelby sent a letter to the Fund, along with a copy of Mason's assignment of benefits to Shelby, following up on the bill it had sent to the Fund and renewing its request for payment.  In response, the Fund sent a letter to Shelby on April 17, 1996, informing Shelby that it had not received a subrogation agreement from Mason and that it could not process the claim without this information.  Shelby filed suit seeking payment of this claim in May 1996; the district court dismissed Shelby's complaint for failure to exhaust administrative remedies in May 1997.  As the litigation was pending, the Fund sent Shelby a subrogation agreement for Mason's signature on September 12, 1996, in response to Shelby's request.  In this letter, the Fund warned Shelby that it was sending this agreement "without prejudice with respect to the Fund's ability to deny any claim filed for timeliness or any other reason consistent with the Fund's rules."  J.A. at 131.  Shelby submitted a signed subrogation agreement and a copy of the police report to the Fund on October 16, 1996.

---

[1]The Fund disputes the amount of charges and claims that it received a bill for $31,761.02 from Shelby.

On January 7, 1997, the Fund denied Shelby's claim on the ground of untimeliness. The Fund concluded that according to the Plan, all information necessary to process a claim, including a subrogation agreement where there is a potentially liable third party, must be submitted within its one-year deadline for filing claims. Shelby appealed the denial of its claim to the Board of Trustees and submitted for the Board's consideration a copy of Mason's assignment of benefits to Shelby, a police report for the accident involving Mason, and the subrogation agreement signed by Mason. On April 3, 1997, the Board of Trustees met and decided to affirm the denial of benefits to Shelby on the ground of untimeliness. It concluded that a claim for benefits relating to an accident involving third party action is not properly filed until all information, including a signed subrogation agreement, is submitted to the Fund. Under the Plan, a participant must file a claim for benefits within one year of the date on which the charges were incurred. In this case, Shelby provided medical treatment to Mason beginning on June 30, 1995, and the Fund did not receive a signed subrogation agreement until October 21, 1996. The Board of Trustees reasoned that Mason's failure to submit a timely subrogation agreement had prejudiced the Fund's ability to pursue damages from the driver of the car that struck Mason because of Tennessee's one-year statute of limitations for personal injury actions.

Shelby filed a complaint in district court challenging this conclusion under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") on May 1, 1998. It attached as exhibits a copy of Mason's assignment of benefits to Shelby, the subrogation agreement with Mason's signature, a letter indicating that the Fund had made some payments for claims related to Mason's accident, and an affidavit stating the amount owed to Shelby. In response, the Fund filed a motion to dismiss Shelby's complaint arguing that the Board of Trustees' interpretation of the Plan and denial of benefits is not arbitrary and capricious. The Fund attached as exhibits to its brief excerpts of the Plan, an affidavit describing the Fund's attempts to contact Mason for

attorney fees in its appeal of the district court's judgment. Because we affirm the district court's conclusion that the Board of Trustees' interpretation of the Plan is unreasonable, the Fund is not entitled to attorney fees. Therefore, the district court did not abuse its discretion in refusing to grant attorney fees to the Fund.

Shelby also challenges the district court's denial of attorney fees and prejudgment interest[3] claiming that the Fund acted in bad faith in denying its claim for benefits and unreasonably interpreted the provisions of the Plan to its detriment. We do not have jurisdiction to consider this argument because Shelby did not file a notice of cross-appeal. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993).

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's summary judgment determination that the Fund's denial of benefits to Shelby based on the Board of Trustees' interpretation of the Plan's one-year time requirement for filing claims is arbitrary and capricious, we **REVERSE** the district court's grant of summary judgment sua sponte awarding Shelby the full amount of damages, and we **REMAND** for the purpose of determining the amount owed to Shelby under the terms of the Plan. In addition, we **AFFIRM** the district court's denial of attorney fees to the Fund.

---

[3]ERISA does not require an award of prejudgment interest to a prevailing plan participant, although a district court has the discretion to grant such an award in accordance with equitable principles. *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998). This determination is reviewed for abuse of discretion. *See id.*

## C. Attorney Fees

Under 29 U.S.C. § 1132(g)(1), a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." A district court must consider the following factors in deciding whether to award attorney fees,

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998) (quoting *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)), *cert. denied*, 119 S. Ct. 1756 (1999). We review a district court's award or denial of attorney fees for abuse of discretion. *See id.*

The district court denied requests for attorney fees from the Fund and from Shelby. The Fund renews its request for

---

reasonable expectations should apply. Shelby also argues that the Fund is estopped from denying benefits because the Fund misrepresented that it would pay benefits upon receipt of a signed subrogation agreement regardless of the one-year deadline and because the Fund partially performed by making de minimis payments on claims in connection with Mason's accident. Because we affirm the district court's award of summary judgment based on the determination that the Fund's denial of Shelby's claim on the ground of untimeliness is arbitrary and capricious, we need not address these arguments. In addition, Shelby asserts that the Fund violated ERISA by failing to comply with Shelby's request for a copy of the Plan pursuant to 29 U.S.C. § 1132(c)(1). However, the district court rejected this claim because Shelby did not raise this issue in its complaint, and we do not have jurisdiction to review this determination because Shelby did not file a notice of cross-appeal. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993).

a subrogation agreement, and copies of correspondence between Shelby and the Fund regarding the subrogation agreement and the status of Shelby's claim. Shelby filed a response to the Fund's motion to dismiss making the following arguments: that the Board of Trustees' interpretation of the Plan is arbitrary and capricious, that the Plan should be estopped from denying payment of the claim, and that the Plan failed to provide Shelby with a copy of the Plan in violation of 29 U.S.C. § 1132(c)(1). Shelby also attached several exhibits, including Mason's assignment of benefits, an affidavit describing its outstanding bill for services provided to Mason, correspondence between Shelby and the Fund, and a copy of the police report. Finally, the Fund filed a reply to Shelby's response and addressed each of Shelby's arguments. The Fund included as exhibits correspondence between the Fund and Shelby.

As the parties were filing these motions, the district court entered a scheduling order pursuant to FED. R. CIV. P. 16(b), establishing the deadline for completing discovery on October 5, 1998, the deadline for filing potentially dispositive motions on November 5, 1998, and setting trial for January 25, 1999. On November 5, 1998, the Fund filed a motion for an extension of time to file dispositive motions until 30 days after the district court's order ruling on the Fund's motion to dismiss. The district court granted this motion. However, two months later the district court sua sponte converted the Fund's motion to dismiss into a motion for summary judgment and denied the motion in an order entered on January 5, 1999. The district court concluded that the Board of Trustees' interpretation of the Plan is arbitrary and capricious, sua sponte granted Shelby summary judgment, and ordered the Fund to pay Shelby $31,770.22, the full amount of benefits Shelby requested. The district court rejected Shelby's argument that the Fund should be estopped from denying payment and that the Fund violated 29 U.S.C. § 1132(c)(1) by refusing to provide Shelby with a copy of the Plan. Finally, the district court denied both parties' requests for attorney fees and Shelby's request for prejudgment

interest.  The Fund filed a timely notice of appeal of the district court's judgment.

## II. ANALYSIS

### A. Summary Judgment Sua Sponte

When a district court grants summary judgment sua sponte, its decision is subject to two separate standards of review. The substance of the district court's decision is reviewed de novo under the normal standards for summary judgment. *See Salehpour v. University of Tennessee,* 159 F.3d 199, 203 (6th Cir. 1998), *cert. denied,* 119 S. Ct. 1763 (1999).  The district court's procedural decision to enter summary judgment sua sponte, however, is reviewed for abuse of discretion. *See id*. We have held that a district court may enter summary judgment sua sponte in certain limited circumstances, "'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'"  *Id.* at 204 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).  More specifically, we have held that FED. R. CIV. P. 56(c) mandates that the losing party must "be afforded notice and reasonable opportunity to respond to all the issues to be considered by the court." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 105 (6th Cir. 1995).  A clear example of the district court's power to grant summary judgment sua sponte is found in FED. R. CIV. P. 12(b), which gives a district court the authority to turn a motion to dismiss into a motion for summary judgment where the court is presented with materials outside the pleadings. *See* FED. R. CIV. P. 12(b); *see also Employers Ins.*, 69 F.3d at104-05. This rule expressly states,

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relied can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall

interpretation of the Plan is arbitrary and capricious as a matter of law.

After determining that the Board of Trustees' interpretation is unreasonable, the district court concluded that Shelby had filed its claim when it billed the Fund for its services shortly after they were incurred and thus had met the one-year time requirement. When the Fund denied Shelby's claim, the Fund reasoned that a complete claim had not been filed until October 21, 1996, when the Fund received a subrogation agreement signed by Mason.  The Fund stated that it had contacted Mason several times to request that he sign a subrogation agreement and "advised that the claim would not be processed until the fund received the required agreement." J.A. at 65.  Based on the Fund's reasoning in denying Shelby's claim, it is clear that the Fund considered Shelby's request for payment of services to be a claim for benefits. The Fund simply did not consider the claim complete for processing until it received the subrogation agreement. The district court properly concluded that Shelby had filed its claim when it billed the Fund a few weeks after the charges were incurred and well within the one-year deadline required by the Plan.  Therefore, the district court did not err in concluding that the Fund's denial of benefits to Shelby for untimeliness was arbitrary and capricious.

Having found that Shelby filed a timely claim for benefits, the district court then awarded Shelby $31,770.22 for the hospital services it provided to Mason. As already discussed in Part II.A *supra*, the district court abused its discretion in granting summary judgment sua sponte on the amount owed to Shelby. Therefore, we remand this case to the district court to determine the proper amount of benefits Shelby is entitled to for the hospital services it provided to Mason in accordance with the terms of the Plan.[2]

---

[2]We note that Shelby also makes a variety of other arguments on its behalf.  With respect to the Board of Trustees' interpretation of the Plan, Shelby argues that the rule of contra proferentum and the doctrine of

Plan states only that benefits may not be paid until a subrogation agreement is submitted as part of the proof of loss for a claim; it does not state that this is necessary to *file* a claim and that benefits may be denied altogether if such an agreement is not filed within the one-year deadline for filing claims.

The Fund also points to another provision in the Plan to support the Board of Trustees' interpretation. The Plan states that it excludes any "[c]harges which are or may become the responsibility of any third party. (The plan Administrator has been authorized by the Trustees to pay benefits when the beneficiary and legal counsel have executed a subrogation form which is satisfactory to the plan Administrator.)" J.A. at 36. The Fund argues that this provision gives the Trustees discretionary authority to request documentation for claims, including the determination of what documentation is required in order for a claim to be filed. The Fund cites to *Bali v. Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir. 1989), in which the court determined that a plan administrator had discretionary authority to determine the documentation required to prove disability based on the language of the plan. Unlike *Bali*, however, in this case the language in the Plan giving discretionary authority to the plan administrator to require a satisfactory subrogation agreement only relates to the plan administrator's authority to pay benefits. This provision only requires a satisfactory agreement before the payment of benefits; it does not state that such documentation is required in order to file a claim.

Although the language of the Plan regarding when a claim is filed is ambiguous, the Board of Trustees' interpretation that all information, including a signed subrogation agreement when third party liability may be involved, necessary to process a claim must be submitted to file a claim is an unreasonable interpretation. This requirement cannot be found in the language of the Plan. Therefore, the district court did not err in concluding that the Board of Trustees'

be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED. R. CIV. P. 12(b). Whether a district court must provide actual notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case. *See Salehpour*, 159 F.3d at 204. However, "[w]here one party is likely to be surprised by the proceedings, notice is required." *Id.*

The Fund argues that the district court abused its discretion because it did not provide any notice that it was contemplating entering summary judgment against the Fund. Instead, the Fund asserts, the district court led the Fund to believe that it would have an opportunity to file a motion for summary judgment because the district court granted its motion for an extension of time to file dispositive motions within 30 days of ruling on its motion to dismiss. Therefore, the Fund claims it was denied the opportunity to present all material pertinent to a motion for summary judgment.

The district court did not abuse its discretion in sua sponte converting the Fund's motion to dismiss into a motion for summary judgment pursuant to FED. R. CIV. P. 12(b). The Fund submitted substantial extrinsic material to the district court as exhibits to its motion to dismiss. In response to the Fund's motion, Shelby also included exhibits extrinsic to the pleadings. The Fund then filed a reply to Shelby's response to the Fund's motion to dismiss and thus had the opportunity to respond to the arguments and exhibits that Shelby submitted. In their briefs, both parties comprehensively addressed the Fund's argument that the Board of Trustees' interpretation of the Plan is not arbitrary and capricious. Because the parties both submitted numerous exhibits fully addressing the Fund's argument for dismissal, they had sufficient notice that the district court could consider this outside material when ruling on the issues presented in the Fund's motion to dismiss and could convert it into a motion for summary judgment under FED. R. CIV. P. 12(b). The

parties also had a reasonable opportunity to address the Board of Trustees' interpretation of the Plan. Thus, the Fund and Shelby had sufficient notice and opportunity to address the issues presented in the Fund's motion. *See Salehpour*, 159 F.3d at 204 (affirming the district court's conversion of a defendant's motion to dismiss into a motion for summary judgment where both parties had submitted voluminous outside material and had the opportunity to respond to the issues and evidence presented). Furthermore, when a district court is reviewing a plan administrator's denial of benefits, the court may only consider those materials that were available to the plan administrator when it made its final decision. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). In this case, the materials Shelby had submitted to the Board of Trustees to review on its appeal were also submitted to the district court as exhibits to the Fund's motion to dismiss. Because the district court already had all of the material it could examine in conducting its review of the Board of Trustees' denial of benefits, the Fund could not have submitted any additional evidence. Therefore, the district court did not abuse its discretion when it sua sponte converted the Fund's motion to dismiss into a motion for summary judgment and ruled on the Fund's argument that the Board of Trustees' denial of benefits based on the Board's interpretation of the Plan regarding the requirements for filing a timely claim is not arbitrary and capricious.

Next we must determine whether the district court abused its discretion in granting summary judgment sua sponte to Shelby, a nonmoving party. We have noted that although "a district court should only enter summary judgment in the absence of a cross-motion with great caution . . . the fact that the nonmoving party has not filed its own summary judgment motion does not preclude the entry of summary judgment if otherwise appropriate." *K.E. Resources, Ltd. v. BMO Fin. Inc. (In re Century Offshore Management Corp.)*, 119 F.3d 409, 412 (6th Cir. 1997) (affirming the district court's sua sponte grant of summary judgment to a nonmoving party where the parties had fully briefed the determinative issue and

possible liability. This allows the Fund to determine whether or not the claim is covered under the Plan. The Fund also argues that it must have a signed subrogation agreement in order to pursue any action against a potentially liable third party. In this case, the Fund argues that it could not file suit against the driver of the car that struck Mason because the one-year statute of limitations for personal injury suits under Tennessee law had already expired once it received a signed subrogation agreement from Mason. The Fund claims that these are rational purposes behind the Board of Trustees' interpretation of the Plan.

The Fund also argues that where there is ambiguity in the Plan, the Board of Trustees has the discretion to resolve the ambiguity. We have stated that "we grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms." *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995). A plan administrator's interpretation of ambiguous provisions must, however, be reasonable. *See Johnson*, 970 F.2d at 1574. Although the Fund has provided rational justifications for requiring a subrogation agreement to be submitted within the one-year time requirement for filing claims, it has not established the reasonableness of this requirement based on the language of the Plan. As previously discussed, the Plan requires that a claim for benefits be filed within one year but does not elaborate on what is required in order properly to file a claim. The Plan does not state that a participant must submit all information that is necessary to process the claim in order to *file* the claim within the deadline. Nor does the Plan give any indication that a signed subrogation agreement is required to file a claim. It states, "[t]he participant is required to submit a signed copy of a Subrogation Agreement provided by the Fund office as part of proof of loss for a claim involving third party action. *Failure to submit such signed agreement may cause payment of the claim to be delayed* until the third party action is resolved or disallowed due to failure on the part of the participant to provide adequate proof of loss." J.A. at 38 (emphasis added). The

Subrogation Agreement provided by the Fund office as part of proof of loss for a claim involving a third party action. Failure to submit such signed agreement may cause payment of the claim to be delayed until the third party action is resolved or disallowed due to failure on the part of the participant to provide adequate proof of loss." J.A. at 38. Based on its interpretation of these provisions, the Board of Trustees concluded that a claim is not "filed" until the Fund receives all information required to process the claim. In cases involving a potentially liable third party, a participant must submit a subrogation agreement to process a claim. Therefore, the Board of Trustees determined that the Fund must receive a subrogation agreement as part of the proof of loss within the one-year deadline for the submission of claims for cases involving potential third party liability. Although Shelby billed the Fund for the services it provided to Mason soon after the charges were incurred, a subrogation agreement with Mason's signature was not submitted within the one-year deadline. The Fund argues that the Board of Trustees' interpretation of the Plan is reasonable and Shelby's claim should be denied accordingly.

The Plan does not explain when a claim will be considered to have been filed for the purpose of the one-year time requirement for filing claims. The language of a plan is ambiguous if it is subject to more than one reasonable interpretation. *See Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir.), *cert. denied*, 513 U.S. 1058 (1994). In the absence of any further explanation of when a claim is filed, one could make several different reasonable interpretations of this provision. The Fund argues that the Board of Trustees' construction of the Plan that a participant must submit all information required to process a claim, including a signed subrogation agreement if there is third party action, within the one-year deadline for filing claims is reasonable. It claims that this interpretation serves several important purposes. The subrogation agreement includes a questionnaire about the accident or incident, which informs the Fund about the nature of the third party's involvement and

had agreed that no factual dispute existed). Shelby had not filed any dispositive motions which would have put the Fund on notice that it had to come forward with all of its evidence in response to Shelby's complaint. When the district court ruled on the Fund's converted motion for summary judgment, the court concluded that the Board of Trustees' interpretation of the Plan regarding the requirements for filing a timely claim is arbitrary and capricious as a matter of law. As discussed above, the district court did not abuse its discretion in deciding this issue on summary judgment. Because the Fund had denied Shelby's benefits for untimeliness, the district court then sua sponte entered summary judgment on behalf of Shelby and awarded the full amount of damages requested. Neither party, however, had addressed the issue of the amount of benefits the Fund would have awarded to Shelby under the terms of the Plan had the Fund determined that Shelby had filed a timely claim. The Fund points out that Shelby may not be entitled to the full amount of the claim under the Plan. For example, the Plan states that it will not cover "[c]harges which are not 'Reasonable and Customary', or which are excessive." J.A. at 34. Nor will it pay for "[s]ervices which are not 'Medically Necessary.'" J.A. at 34. The Plan also states that it will not cover "[c]harges for benefits that are not payable due to the application of any specified deductible or co-payment provisions contained herein." J.A. at 37. Because the parties had not addressed in their briefs the issue of the amount of benefits due under the Plan and the district court had granted the Fund's motion for an extension to file dispositive motions, it was reasonable for the parties to believe that the district court would only rule on the issues presented in the Fund's converted motion for summary judgment. They were not on notice that the district court would consider on summary judgment the amount of benefits due. Moreover, the Fund and Shelby did not have a reasonable opportunity to address this issue before the district court decided it. Therefore, the district court abused its discretion in granting summary judgment sua sponte to Shelby on the amount of benefits due under the terms of the Plan.

## B.  Denial of Benefits

We now review the merits of the district court's summary judgment determination that the Board of Trustees' interpretation of the Plan regarding the requirements for filing a timely claim is arbitrary and capricious. *See Salehpour v. University of Tennessee,* 159 F.3d 199, 203 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 1763 (1999).  We review de novo the district court's decision, applying the same FED. R. CIV. P. 56 summary judgment standard used by the district court.  *See Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 462 (6th Cir. 1998).  Summary judgment is appropriate where there is no genuine issue of material fact and a party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c).  In an action challenging the denial of benefits under 29 U.S.C. § 1132(a)(1)(B), a plan administrator's decision is reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the benefit plan does grant such discretionary authority, the plan administrator's decision to deny benefits is reviewed under the "arbitrary and capricious" standard of review.  *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (en banc).  This highly deferential standard of review is appropriate only if the benefit plan contains "'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Id.* (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir.), *cert. denied*, 513 U.S. 1058 (1994)).

In this case, the administrator of the Plan is the Board of Trustees.  The Plan states, "This Board has the primary responsibility for decisions regarding eligibility rules, type of benefits, administrative policies, management of Plan assets, and interpretation of Plan provisions." J.A. at 39.  The parties agree that this language expressly gives the Board of Trustees the authority to interpret the Plan.  We have found a clear grant of discretionary authority in a benefit plan containing

similar language.  *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (finding such a grant where the plan states that its administrator is vested with "full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.").   Therefore, the Board of Trustees' interpretation of the Plan, resulting in the denial of benefits, must be affirmed unless it is arbitrary and capricious.  Under this standard of review, "we must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.'" *Id.* (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.), *cert. denied*, 488 U.S. 826 (1988)).  A decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan.  *See Johnson v. Eaton Corp.*, 970 F.2d 1569, 1574 (6th Cir. 1992).  Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Firestone*, 489 U.S. at 113 (quotations omitted).  As part of this goal, Congress intended ERISA plans to "be uniform in their interpretation and simple in their application." *McMillan v. Parrott*, 913 F.2d 310, 312 (6th Cir. 1990).  Thus, a plan administrator must discharge its duties with respect to the plan "'in accordance with the documents and instruments governing the plan.'" *Id.* at 311 (quoting 29 U.S.C. § 1104(a)(1)(D)).  In interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person.  *See Callahan v. Rouge Steel Co.*, 941 F.2d 456, 459-60 (6th Cir. 1991).

The Board of Trustees denied Shelby's claim for benefits because it concluded that the claim was not submitted within the Plan's one-year time limit.  The Plan states that no benefits will be paid for "[a]ny charges incurred more than one year prior to the date the claim is filed." J.A. at 37.  Nor will any benefits be paid for "[c]harges which are or may become the responsibility of any third party." J.A. at 36.  In cases involving a potentially liable third party, the Plan requires a participant to "submit a signed copy of a