**Ernest GLASCOE, Plaintiff–Appellee,**

v.

**CENTRAL STATES, SOUTHEAST & SOUTHWEST AREAS PENSION FUND, Defendant–Appellant.**

No. 00–6430.

United States Court of Appeals, Sixth Circuit.

March 29, 2002.

Before MOORE and COLE, Circuit Judges; and TARNOW,* District Judge.

### OPINION

COLE, Circuit Judge.

Plaintiff-appellee, Ernest Glascoe, claimed retirement pay beyond that which he received from defendant-appellant, Central States, Southeast and Southwest Areas Pension Fund ("Central States"), a non-profit Taft–Hartley Trust. After Central States rejected Glascoe's claim, Glascoe sued the fund pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Upon review, the district court concluded that Central States arbitrarily and capriciously denied Glascoe's claim and awarded him the retirement pay he claimed. Central States appealed that judgment. For the reasons stated below, we AFFIRM the judgment in favor of Glascoe.

---

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

Ernest Glascoe claims to have worked as a truck driver for Brown Freight Lines ("Brown Freight") from January 2, 1967, until July 18, 1991. During his employment with Brown Freight, Glascoe was a member of Teamsters Local Union No. 480. Consequently, he believed that under the collective bargaining agreement ("CBA"), Brown Freight was paying his union dues and making his pension contributions to Central States. Because Brown Freight paid him in cash, without an earnings statement, Glascoe assumed, but never knew, that Brown Freight properly withheld and paid his union dues and pension contributions. In September 1991, when Glascoe applied for retirement pay, he realized that his assumption was in error.

Central States awarded Glascoe only a portion of the retirement pay he expected. Upon inquiry, Glascoe discovered that he did not receive credit for his work at Brown Freight between January 2, 1967 and January 1, 1973 because Brown Freight did not pay his union dues, nor did it make his pension contributions for that period.[1] Glascoe repeatedly requested that Central States recalculate his pension based on his status as a driver from 1967 to 1973. After a seven-year review, Central States denied Glascoe's claim because it believed that Glascoe worked as a "utility man" from 1967 until 1973 and as such was not covered under the CBA. Central States maintained that according to the CBA in force from February 1, 1964 to March 31, 1967,[2] "utility man" was not a covered position. Rather, the covered employees were "any Driver, Chauffeur, Driver–Helper, operating a truck, tractor, motorcycle, passenger or horse drawn vehicle, or any other vehicle operated for transportation purposes when used to defeat the purposes of this Agreement and Checkers, Fork–Lift Operators, Dockmen, and Helpers." Glascoe disagreed with Central States' conclusion and filed suit in federal district court.

Glascoe offers the following evidence to prove that he worked for Brown Freight as a driver and not a "utility man" from 1967 until 1973:

An "Employment Affidavit" completed by Charles Brown, the former President of Brown Freight, on May 14, 1991 states that Glascoe worked as a "city driver, etc." from January 2, 1967 until present.

An affidavit from Glascoe's co-workers Billy Vaughn and Joe A. Damron states that "Ernest Glascoe was a city pick up and delivery driver for Brown Freight Line from 1967 through June 1991."

Glascoe's 1969 income tax return lists his employment as a "truck driver."

A May 14, 1991 affidavit from Luther Watson, the former President of Teamsters Local No. 480, states that Glascoe worked "under a continuous labor contract by this Union [No. 480] ... [from] 1966 thru present."

The seniority list from Brown Freight compiled on July 30, 1985 lists Glascoe as beginning employment in January, 1967.

The President of Teamsters Local No. 480, Ronnie Martin, swore in an affidavit that "[He had] become familiar with seniority lists maintained by employers

---

1. Although Brown Freight did not make pension contributions for Glascoe during that period, the parties agree that Central States is responsible under the CBA for unpaid pension contributions.

2. While this version of the CBA does not govern the 1967 to 1973 period at issue, the parties do not dispute that the same employees were covered from 1967 to 1973.

that have entered a collective bargaining agreement with a Local Teamster Union. The employer maintains such a seniority list pursuant to the terms of the collective bargaining agreement, and to be placed on a seniority list, a person must be covered by such an agreement. Persons are assigned seniority based on the date they begin work under a collective bargaining agreement." Martin also gave the opinion that the persons listed on Brown Freight's seniority list began working under the collective bargaining agreement on the "date employed."

Teamsters Local No. 480 concluded that based on Brown Freight's seniority list, Glascoe was a member of Local 480 beginning in January 1967.

Central States' Director of Benefit Services, Albert Nelson, admitted in deposition that he did not know what tasks a "utility man" performs, thus it is possible that even if Glascoe was employed as a "utility man," he would be covered under the CBA.

An itemized statement of earnings from the Social Security Administration for the period January 1964 until December 1972 shows that Glascoe was paid by Brown Freight from 1966 through 1972. Additional affidavits from Brown Freight employees, Damron and Vaughn, state that Damron and Vaughn worked with Glascoe as city pickup and delivery drivers—Damron from January 2, 1967 until June 1991 and Vaughn from June 1968 until June 1988. The affidavits also aver that Brown Freight never had any job category known as a "utility man" and that from 1968 until the early 1970s, all Brown Freight employees were paid in cash and they were told that they were all union members and that their union membership dues were paid for them.

Brown Freight engaged in "pension skimming" for another employee, Vaughn, whose employment began in 1968, but whose union contributions did not begin until January 1970.

Central States disagrees with Glascoe and relies on the following evidence in support of its position:

An unsigned, un-notarized statement bearing the name of Charles H. Brown and typed on a letter received from Central States explains that "Mr. Glascoe was a utility man and not covered under the contract until 1973. Brown Freight Line is no longer in business and no contributions are due that have not been paid that I know of."

According to the union ledger, no union dues were paid for Glascoe until 1976.

Glascoe did not receive a chauffeur's license until 1968, suggesting that he did not work as a driver during his entire tenure at Brown Freight.

The affidavits that Glascoe submitted are unreliable because they were submitted many years after the fact, after memories may have faded or blurred.

Glascoe rebuts each of Central States' arguments. First, Glascoe explains that, in all likelihood, Brown Freight was "skimming" by not paying his union dues, as it had done with Vaughn. Thus, Glascoe argues that the "utility man" explanation was Brown's attempt to avoid liability after he previously answered that Glascoe worked as a driver. Moreover, Glascoe notes that Central States' internal records suggest that it had reason to doubt Brown:

Charles Brown (Brown Freight) said "utility man" not covered by CBA [collective bargaining agreement] until '73 (when we asked about owed $)—earlier he said driver.

\* \* \* \* \* \*

5/2/94 Charles Brown said "does not remember no records; has no idea type of work performed."

With respect to his chauffeur's license, Glascoe explains that before 1968 his routes were less than ten miles long, and for that reason he did not need such a license. In 1968, he drove longer routes and consequently obtained a chauffeur's license. At a minimum, Glascoe argues that the fact that he obtained a chauffeur's license demonstrates that he was a driver for Brown Freight from 1968 forward. Even more, Glascoe responds to Central States' criticism that his supporting affidavits are based on stale recollections by pointing out that Central States' argument applies with the same, if not greater, force to the unsigned, un-notarized statement, purportedly from Charles Brown, that Central States relies on.

In addition to this rebuttal, Glascoe argues that Central States failed to investigate his case fully. Central States did not contact Vaughn either to investigate his credibility or to obtain more information, despite Vaughn's offer of assistance. Nor did Central States follow up with other union officials or contact Brown Freight's successor about Glascoe's union contributions or employment.

In light of this evidence, the district court concluded that Central States arbitrarily and capriciously denied Glascoe's retirement pay because Central States offered "no reasonable explanation for its finding." On that ground, the district court denied Central States' motion for judgment on the administrative record. In reaching that conclusion, the district court hypothesized that Central States' basis for denying Glascoe's claims could be due to a conflict of interest, but made no findings that a conflict of interest existed.[3] Finally, the district court concluded that the evidence sufficiently supported Glascoe's claim and granted him judgment on the administrative record. Central States appealed and the matter is now before us.

## II.

Based on the administrative record, Glascoe is entitled to the pension he claims. Both parties acknowledge that we review Central States' denial of retirement pay to Glascoe under the arbitrary and capricious standard because Central States had discretionary authority to determine eligibility for pension benefits. *See Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund,* 203 F.3d 926, 933 (6th Cir.2000). Here, Glascoe presents several pieces of evidence to support his position, including multiple sworn affidavits. Central States attempts to rebut Glascoe's evidence (which includes an affidavit from Charles Brown stating that Glascoe worked as a driver from 1967 until 1991) through an unsigned, unsworn statement bearing Charles Brown's name, which alleges that Glascoe worked as a "utility man" from 1967 to 1973. Central States also relies on Glascoe's 1968 chauffeur's license and the fact that there is no record that Glascoe's union dues were paid before 1976 to conclude that Glascoe was not a driver from 1967 to 1973. Central States' evidence is extremely inadequate, particularly in light of the evidence that Glascoe puts forth. By relying on such inconclusive, unreliable

**3.** Central States also argues that the district court improperly applied a less deferential conflict-of-interest standard of review. Central States is wrong. The district court acknowledged the possibility that a conflict of interest existed, but did not hold that Central States denied Glascoe's claim due to a conflict of interest. Thus, Central States' injection of the conflict-of-interest standard-of-review analysis into the appellate briefing is inappropriate.

evidence and by ignoring Glascoe's contrary evidence, Central States arbitrarily and capriciously denied Glascoe's pension claim. For that reason, we **AFFIRM** the district court's judgment on the administrative record in Glascoe's favor.