**Joe D. EASTERLY, et al.**
**Plaintiffs–Appellees,**

v.

**PHILIPS ELECTRONICS NORTH**
**AMERICA CORPORATION**
**Defendant–Appellant.**

No. 00–6498.

United States Court of Appeals,
Sixth Circuit.

June 10, 2002.

Before DAUGHTREY and MOORE, Circuit Judges, and SIMPSON, District Judge.*

---

* The Honorable Charles R. Simpson III, United States District Judge for the Western District of Kentucky, sitting by designation.

## OPINION

SIMPSON, District Judge.

Plaintiffs brought this class action under the Employee Retirement Income Security Act, ("ERISA") 29 U.S.C. §§ 1001, *et seq.* after their employer, Philips Electronics North America Corporation ("Philips") sold the manufacturing facility at which they were employed as a "going concern" and denied them benefits under its severance pay benefit plan (the "Plan"). The district court denied Philips summary judgment and granted summary judgment to plaintiffs because it found the denial of benefits arbitrary and capricious. For the reasons stated below, we REVERSE and REMAND for entry of judgment in favor of Philips.

### FACTS AND PROCEDURAL BACKGROUND

In 1997 Philips decided to sell or close two manufacturing facilities and one refurbishing facility for consumer electronics in Greenville, Tennessee. The Plan provided that upon "being laid off or separated at Company convenience," Philips would provide terminated employees with "one week of severance pay for each full year of salaried service with a minimum of two weeks." The Plan further provided:

1.0 PURPOSE

To establish guidelines under a Severance Pay Plan to financially assist salaried employees being laid off or separated at Company convenience and provide for the payment of such pay under the conditions specified herein.

2.0 POLICY

The Severance Pay Plan is to financially assist those employees being laid off or separated at Company convenience, recognizing their salaried years of service. Temporary layoffs and temporary plant shutdowns (i.e., vacation, etc.) are not covered by this policy.

3.0 STRATEGIES

. . . .

3.6 No severance pay will be paid for those individuals who refuse comparable employment. Comparable employment is defined as any position which allows the employee to retain their current salary.

3.9 Severance pay under the above sections will be paid in the form of Salaried Continuance. The payments are designed to financially assist salaried employees during the period of unemployment and will cease when the severance payments expire. . . .

Based on the forgoing provisions, Philips, as Plan administrator, interprets it to exclude those who continued employment with the purchaser of a Philips facility in a "going concern" sale. According to Philips's interpretation, severance pay is conditioned on employees experiencing an initial period of unemployment following separation from Philips.

Philips closed the refurbishing facility and permanently laid off all employees. Prior to the closing, Philips informed the refurbishing facility employees they would receive severance pay upon termination pursuant to the Plan. A memorandum was distributed explaining severance pay would not be terminated upon employment with another company but would cease upon employment within Philips. As indicated in the memorandum, all terminated salaried employees at the refurbishing facility received severance benefits.

Philips sold the two manufacturing facilities to separate purchasers. The facilities were sold as "going concerns" with the requirement that the purchasers agree to

hire the majority of Philips's salaried employees. Both sale agreements provided that "Buyer will have no liability or obligations to pay or provide ... benefits earned or accrued by Seller's former employees prior to the Closing."

Prior to the sale, Philips distributed a memorandum to manufacturing facility employees informing them they would be entitled to severance pay under the Plan if they were not asked to continue employment with the purchasers. It further explained that employees who were offered jobs would not be entitled to severance pay. After the sale, those employees who received employment offers did not receive severance benefits.

All but one of the named plaintiffs were re-employed by the purchasers without interruption in employment. The remaining named plaintiff, Lonnie Carpenter, was offered employment but declined the offer.

Plaintiffs filed this action in Tennessee state court, on behalf of themselves and others similarly situated, to recover severance pay under the Plan. Philips removed the action to the United States District Court for the Eastern District of Tennessee, Northeastern Division. The parties subsequently filed cross-motions for summary judgment. The district court granted plaintiffs' motion and denied Philips's motion because it found Philips's denial of Plan benefits arbitrary and capricious.

## DISCUSSION

1. *Philips's Denial of Plan Benefits to Plaintiffs Who Continued Employment With the Purchasers*

A grant of summary judgment is reviewed *de novo. See General Elec. Co. v. G. Siempelkamp GmbH & Co.,* 29 F.3d 1095, 1097 (6th Cir.1994).

The parties agree Philips's decision to deny benefits under the Plan is subject to the "arbitrary and capricious" standard of review. "A decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." *Shelby Co. Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Fund,* 203 F.3d 926, 933 (6th Cir.2000). An interpretation is unreasonable if it imposes a requirement that cannot be found in the plan's language. *See id.* at 935. Further, we have looked to whether the administrator has consistently interpreted the plan in the past, "with an eye toward determining whether an administrator's decision was so anomalous as to appear 'arbitrary and capricious' in light of past statements and actions." *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 950 (6th Cir.1990). Where the administrator has advanced a reasonable plan interpretation, that interpretation should be upheld even if the plan is susceptible to another conflicting reasonable interpretation. *See Wells v. United States Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1248 (6th Cir.1991); *see also Johnson v. Eaton Corp.,* 970 F.2d 1569, 1574 (6th Cir.1992).

Philips's plan interpretation required that employees experience an initial period of unemployment in order to receive severance benefits. The district court concluded as a matter of law that this interpretation is "unreasonable, arbitrary and capricious" because it required plaintiffs to choose between unemployment without severance pay or employment without the benefits they previously enjoyed. (JA 69). Although the Plan's language is ambiguous, Philips's interpretation is reasonable and therefore must be upheld.

Section 1.0 of the Plan provides its purpose is to "financially assist salaried employees being laid off or separated at Company convenience and provide for the payment of [severance] pay under the conditions specified herein." Philips contends

the phrase "laid off or separated" means laid off or separated *from employment.* Thus, Philips asserts most of the plaintiffs were never "laid off or separated" under the Plan because they never experienced a period of unemployment. Plaintiffs, on the other hand, suggest this phrase merely requires separation from employment *with Philips.*

The Plan's language is ambiguous as it does not include the phrase "from employment" or "from employment with Philips." However, because Philips's interpretation is not foreclosed by the Plan's plain language, it is reasonable. *See Shelby,* 203 F.3d at 935.

Further, we have found similar plan language reasonably supports an interpretation requiring a period of unemployment as a condition of severance benefits. *See Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623, 626 (6th Cir.1987)(finding employer's denial of benefits to employees who continued employment after a "going concern" sale reasonable in light of plan language that provided benefits only upon termination "necessary to eliminate a position because of reduced workload or due to economic necessity."); *Blakeman v. Mead Containers,* 779 F.2d 1146, 1150 (6th Cir.1985)(finding employer's denial of benefits to employees who continued employment after a "going concern" sale not arbitrary and capricious when severance plan only provided benefits to employees who were "involuntarily terminated in the interest of the division.").

Section 3.9 of the Plan, which provides "payments are designed to financially assist salaried employees during the period of unemployment," further bolsters Philips's interpretation. This language suggests the Plan's purpose is to ease the financial burdens of unemployment, which assumes at least an initial period of unemployment is required for payment of bene-

fits. *See, e.g., Adcock,* 822 F.2d at 626 (noting plan language "states the goal of the plan is to reduce the stress of terminated employees between the time of their release and securing other employment" in concluding "it is a fair reading of the plan to require unemployment as a prerequisite to ... termination pay.").

Plaintiffs argue Section 3.9 is rendered meaningless by a 1994 amendment that omitted a proviso that ceased benefits when the "affected employee accepts other employment." Further, they assert Section 2.0, which implies a Plan purpose is to "recognize [employees'] salaried years of service," demonstrates the Plan's purpose is to reward loyal employees upon the termination of their relationship with Philips.

First, although these arguments may demonstrate plaintiffs' Plan interpretation is reasonable, it does not render Philips's interpretation irrational or unreasonable in light of the Plan's terms.

Second, the 1994 amendment merely changed the Plan terms as to when severance benefits ceased. It did not change the requirements for benefit eligibility, which are the requirements at issue here. Moreover, that the phrase "during the period of unemployment" was retained suggests mitigating the hardships of unemployment remains a Plan purpose and therefore supports Philips's interpretation.

Plaintiffs offer extrinsic evidence in an effort to show Philips has interpreted the Plan inconsistently in the past such that its current interpretation may be deemed arbitrary and capricious. However, this evidence is not sufficient to warrant summary judgment in their favor.

Plaintiffs cite evidence indicating Philips erroneously classified some of the plaintiffs as having voluntarily resigned. However, this classification is not inconsistent with

Philips's Plan interpretation, which does not consider employees who continue with "going concern" purchasers "laid off or separated."

Plaintiffs cite the memorandum distributed to the refurbishing plant employees, which read severance benefits would not be terminated upon employment with another company but would be terminated upon employment within Philips. However, this memorandum was addressed to refurbishing facility employees only. The refurbishing facility was closed and those employees were not offered employment by a "going concern" purchaser. Thus, the memorandum has no relevance to whether Philips has interpreted the Plan consistently in a "going concern" sale context.

Because Philip's interpretation is reasonable and plaintiffs have not presented evidence demonstrating Philips interpreted the Plan inconsistently in the past, the district court's grant of summary judgment to plaintiffs on grounds that Philips's denial of benefits was arbitrary and capricious was erroneous.

2. *Philips's Denial of Plan Benefits to Plaintiff Who Refused Employment With the Purchaser*

One of the named plaintiffs, Lonnie Carpenter, was offered employment with a successor company but declined the offer. He was thus denied severance benefits under Plan Section 3.6, which provides "[n]o severance benefits will be paid for those individuals who refuse comparable employment. Comparable employment is defined as any position that allows the employee to retain their current salary." It is undisputed that Carpenter was offered a position with the same base salary. However, had he accepted the offer he would have lost entitlement to four weeks

of paid vacation and certain other benefits he enjoyed while in Philips's employ.

Plaintiffs argue the "salary" was not the same because Carpenter would have had to work four extra weeks to earn the same amount of money he would have earned with Philips and because the lost benefits resulted in less total compensation. Philips, on the other hand, interprets "salary" as used in the Plan to mean base salary, as opposed to total compensation. Again, because this interpretation is reasonable, Philips's denial of benefits to Carpenter was not arbitrary or capricious.

The Plan's language does not define "salary." Absent a definition, the term can reasonably be interpreted to mean base salary. Further, plaintiffs have not provided any evidence that Philips interpreted the provision inconsistently in the past. Thus, Philips's denial of benefits based on its reasonable interpretation of "salary" cannot be deemed arbitrary or capricious. The district court's grant of summary judgment to plaintiffs on this ground was therefore erroneous.

3. *The District Court's Denial of Philips's Motion for Summary Judgment*

Denials of summary judgment are reviewed for an abuse of discretion. *Pinney Dock & Transp. Co. v. Penn. Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.1988).

The district court found Philips's Plan interpretation "unreasonable, arbitrary and capricious" because "plaintiffs were placed at a considerable disadvantage by Philips's sale of their plants. They had to choose between unemployment without the many weeks of severance pay to which they otherwise would be entitled and employment without paid health insurance and without the lengthy vacations they had earned through years of service with Philips." As discussed above, a plan administrator's decisions are deemed arbitrary or

capricious if they are based on an unreasonable plan interpretation that is not supported by its language. Here, the district court's decision was based on the financial hardship plaintiffs would experience if denied severance benefits. The district court therefore misapplied the "arbitrary and capricious" standard of review and consequently abused its discretion. *See Koon v. U.S.*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)("A district court by definition abuses its discretion when it makes an error of law.")(citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

Since there was no factual dispute, no evidence that Philips interpreted the Plan inconsistently in the past, and Philips's interpretation of the Plan was reasonable, Philips was entitled to summary judgment. FED.R.CIV.P. 56(c); *see Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). We therefore reverse the district court's denial of Philips's motion for summary judgment.

CONCLUSION

The district court's grant of summary judgment to the plaintiffs is REVERSED. The district court's denial of summary judgment to Philips is REVERSED and REMANDED for entry of judgment in conformity with this opinion.