**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0166n.06**
**Filed: March 2,2006**

**No. 05-1018**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VINCENT BOSCHERATTO, Independent Personal Representative of the Estate of Irone Pavan, Deceased, | ) ) ) | |
| **Plaintiff-Appellant,** | ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| FORD MOTOR COMPANY, a Delaware corporation; UNICARE LIFE & HEALTH COMPANY, a Delaware corporation; JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, a Massachusetts corporation, | ) ) ) ) ) ) ) | **O P I N I O N** |
| **Defendants-Appellees.** | | |

**BEFORE: MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.**

**PER CURIAM.** This litigation provides yet another reminder of why it is essential for individuals to review periodically the documents designating their beneficiaries. In this case, Irone Pavan clearly intended that his nephews, Vincent and Paul Boscheratto, inherit the assets associated with his estate. However, because he failed to complete certain life insurance forms with the requisite care, his wishes were very nearly frustrated. Although his nephews ultimately received their uncle's assets in full, litigation that arose as a result of the lack of clarity with respect to Pavan's designation of his beneficiaries delayed the distribution of those assets. The estate now seeks to lay the blame for the delay, which resulted in a precipitous drop in the value

of a Savings and Stock Investment Plan for Salaried Employees ("SIPP") owned by Pavan, at the foot of his former employer, Ford Motor Company. For the reasons that follow, we hold that Ford bears no legal responsibility for any loss in value to the assets of the estate.

**I.**

Pavan worked as a salaried employee of Ford from 1962 until his retirement in 1992. After he died on June 1, 1999, the dispute mentioned above arose over who stood to inherit the value of his company-sponsored life insurance policies and SSIP. The district court determined that Pavan's nephews, Paul and Vincent Boscheratto, stood to inherit, not his ex-wife. That decision was affirmed by this court on appeal. *Hansmann v. Fidelity Inv. Inst. Servs. Co.*, 326 F.3d 760 (6th Cir. 2003).

Plaintiff Vincent Boscheratto, representing the estate of his late uncle, now seeks to recover a loss in value of $640,094.30 incurred by the SSIP between the time of his uncle's death and August 27, 2003, the date on which the proceeds of the SSIP were paid to the estate. Essentially, plaintiff takes the position that, had Ford not mishandled an Optional Life Insurance Beneficiary Designation executed by Pavan in 1975, the estate could have secured the assets of the SSIP in a more timely fashion, avoiding the drop in value occasioned by a precipitous fall in the price of Ford stock. The district court granted summary judgment to defendants.

Our review of the decision of the district court requires us to recount, as briefly as we can, the litigation that began with Pavan's death in 1999. Among the benefits of a salaried Ford employee were a company-sponsored group term life insurance program and SSIP. The life insurance component consisted of two parts: a basic life insurance policy for which Ford paid the premiums, and an optional policy paid for by the employee. Defendant John Hancock Mutual Life

Insurance Company issued and administered the group policy until 1997, when defendant Unicare Health and Life Insurance Company became the administrator of Ford's life insurance program.

In addition to the basic plan, Pavan elected to purchase optional life insurance. In 1971, he designated his new wife, Renee Pavan (now Hansmann) as the beneficiary of his basic life insurance policy. Their marriage was annulled in 1972. When notified of Pavan's death, Unicare responded that, based upon the information in its files, it appeared that Hansmann had a potential claim to both the basic and optional life insurance policies. (The optional policy provided that, if the policy owner was unmarried, the beneficiary of the basic policy would also receive the proceeds from the optional policy absent a valid beneficiary designation to the contrary.)

Although his will left his entire estate to his nephews, Pavan failed to designate a beneficiary of his SSIP. Under terms of the plan document, "a Participant who has not designated a beneficiary . . . shall be deemed to have designated as beneficiary or beneficiaries under the Plan the person or persons who are entitled in the event of the Participant's death to receive the proceeds under the Company's Group Life Insurance Plan if the Participant is covered under such Plan at the date of his or her death." Thus, Unicare, which also administered the SSIP, concluded that Hansmann potentially stood to inherit its proceeds.

The estate challenged that determination. To resolve the competing claims, Unicare filed a complaint for interpleader under the Employee Retirement Income Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, on behalf of itself and John Hancock, asking the court to determine who was entitled to the proceeds of the life insurance, which the complaint alleged to have been $216, 966. Renee Hansmann then filed a complaint against Ford and Fidelity Investments Institutional Services

Company, which managed the SSIP, seeking its assets. Ford was dismissed from this suit by stipulation and the two cases were eventually consolidated.

The district court ruled on March 9, 2001 that the proceeds from the life insurance policies and the SSIP be awarded to the estate. Hansmann appealed to this court. Before this court's opinion issued, however, there were further developments in the case. While going through his uncle's papers, plaintiff chanced upon an election card signed by Pavan in January 1975 in which he designated his nephews as the beneficiaries of his optional life insurance policy. Also uncovered was a 1978 election card on which Pavan checked a box indicating that he did not wish to change his beneficiary.

In addition to the 1975 and 1978 election cards, which were not in Unicare's possession, Pavan had submitted two other applications for optional life insurance coverage, which were in his file. The first is dated February 18, 1980. As with his 1978 card, Pavan left the section reserved for designation of a beneficiary blank. This section of the form reads in part as follows:

> The beneficiary(ies) for Optional Life Insurance on my life shall be the same as designated for my Basic Life Insurance unless I specify otherwise below:
>
> [lines left blank by Pavan]
>
> By signing this form, I hereby revoke all previous beneficiary designations together with any settlement elections with respect to the Optional Life Insurance Plan. I still reserve the privilege of making other beneficiary changes with respect to the Plan subject to Policy provisions. . . .

Pavan executed a similar form in 1985, again leaving the beneficiary designation blank. This form was also in Unicare's possession.

In the wake of the discovery of the 1975 and 1978 election cards, the estate filed a Rule 60(b) motion to reopen based upon newly discovered evidence. On February 7, 2002, the district court granted the motion despite the pending appeal in this court and retroactively amended its order of March 2001. After this ruling, the estate filed motions in this court attempting to amend the record and to have the matter remanded to the district court. We denied both motions and, in April 2003, issued the opinion cited above affirming the district court without considering the effect of the 1975 or 1978 election cards. *Hansmann, supra.*

On August 27, 2003, the district court ordered disbursement of the life insurance and SSIP proceeds to the estate. While this litigation was pending, the value of the SSIP dropped from over $1,118,000 to $481, 644.72.[1] The estate brought this suit in response, alleging that Ford, Unicare, and John Hancock breached the fiduciary duties imposed upon them by ERISA. The district court held a hearing on the parties' motions for summary judgment in which it explained why judgment to defendants was proper. This reasoning was memorialized in an order and judgment entry dated November 22, 2004. On appeal, the estate only contests the district court's award of summary judgment to Ford.

## II.

This court reviews *de novo* a district court's grant of summary judgment in an ERISA action, applying the same standard used by the district court. *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000).

---

[1] Unfortunately for the estate, 100% of the SSIP account was allocated to the Ford Stock Fund managed by Fidelity.

"Summary judgment is appropriate where there is no genuine issue of material fact and a party is entitled to a judgment as a matter of law." *Id.*; FED.R.CIV.P. 56(c).

In the present suit, the district court gave the following reasons for its grant of summary judgment in open court:

> [I]t's my finding that the [1975 and 1978] forms were unambiguously revoked by the signatures on the 1980 and '85 forms . . . . [T]he form doesn't say if you check this you cancel prior beneficiaries but rather the form says, if you sign this form, unambiguously, and then it goes on to say that any prior beneficiaries are gone.
>
> . . . .
>
> And in terms of causing the diminution and the value of the shares of the fund, two things. One, it was not caused by this failure to transport the [1975/1978] cards. And, two, [the estate] could have prevented it by simply coming to court and asking that the money be put into a safe investment. . . .

The estate argues that the language on the 1980 and 1985 application cards would only have revoked "all previous beneficiary designations" if Pavan had specified new beneficiaries. We disagree. The 1980 application provides in part as follows: "The beneficiary(ies) for Optional Life Insurance on my life shall be the same as designated for my Basic Life Insurance unless I specify otherwise below." At the time he signed this form, Pavan had designated his ex-wife as the beneficiary of his basic life insurance. Although he left this portion of the form blank, he clearly did not intend by doing so to designate his ex-wife as the beneficiary of his optional life insurance. Rather, it is likely that Pavan did not read the language of the application with care and, by leaving the beneficiary designation section of the form blank, intended that his nephews remain the beneficiaries.

Despite Pavan's likely intent, the explicit language of the application precludes us from giving effect to his wishes. The application unequivocally explains to the employee, "By signing this form, I hereby revoke all previous beneficiary designations together with any settlement elections with respect to the Optional Life Insurance Plan." Thus, the 1980 application revoked the designations provided in the 1975 and 1978 cards. Fortunately for all concerned, the result was the same: the nephews still inherited the proceeds of the life insurance policies and SIPP as the sole beneficiaries of the estate.

However, because we conclude that the 1980 application form controls the distribution of the estate's assets, whether or not Ford mishandled the 1975 and 1978 cards is of no legal consequence. That being the case, we hold, as did the district court, that Ford bears no liability for the diminution of the value of the estate from the time of Pavan's death until the distribution of the contested assets in 2003.

**III.**

The judgment of the district court is **affirmed**.