*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0348p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOYCE MORGAN, et al.,

               *Plaintiffs-Appellants,*

    *v.*

SKF USA, INC.,

               *Defendant-Appellee.*

No. 03-6152

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 03-00031—Joseph H. McKinley, Jr., District Judge.

Argued: September 14, 2004

Decided and Filed: October 8, 2004

Before: GUY and SUTTON, Circuit Judges; CARR, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Philip C. Kimball, Louisville, Kentucky, for Appellants. Michael H. Rosenthal, PEPPER, HAMILTON, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Philip C. Kimball, Louisville, Kentucky, for Appellants. Michael H. Rosenthal, Stephen J. Sundheim, PEPPER, HAMILTON, Philadelphia, Pennsylvania, for Appellee.

---

**OPINION**

---

    RALPH B. GUY, JR., Circuit Judge. Plaintiffs, former employees of defendant, SKF USA Inc. (SKF), brought this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), seeking pension benefits under SKF's Pension Plan for Hourly Employees (SKF Plan). Plaintiffs appeal from the order of the district court granting SKF's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). After review of the record, the applicable law, and the arguments presented on appeal, we affirm.

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

**I.**

Plaintiffs were employed by SKF until June 11, 1999, in SKF's tapered roller bearing division in Glasgow, Kentucky. On June 11, 1999, SKF sold this division to Tyson Bearing Company (Tyson). Plaintiffs became employees of Tyson immediately after the sale at the same facility with no period of unemployment or interruption of wages.[1] Under the terms of the sale, Tyson agreed to provide a pension plan equivalent to the SKF Plan, but plaintiffs allege that there was no agreement to merge the two pension plans to guarantee that there was absolutely no change in their pension status.

Plaintiffs subsequently filed claims with the SKF Plan. Plaintiffs argued that they were entitled to pension benefits because they were "laid off" from their SKF employment as a result of the June 11, 1999 sale.

One group of plaintiffs claimed they were entitled to immediate, unreduced pensions under § 4.05 of the SKF Plan, which provides:

> 4.05 *Immediate Vested Retirement.* Any member employed at a Location to which this Section 4.05 applies, as shown on Attachment "A," whose active service with an Employer ceases by reason of a layoff or a permanent shutdown of the plant at such Location, or a department or subdivision thereof, and who, at the date of such cessation of service, or thereafter by reason of the provisions of Section 2.3303(d), shall have attained a service and age combination listed on Attachment "A" for such Location, shall be entitled, by giving written notice to his Employer, to retire at the later of such date, such attainment or the expiration of his recall rights and receive an immediate pension. A Member shall not be entitled to an immediate pension under this Section 4.05 if he should refuse to return to work when recalled by an Employer.

Another group claimed they were entitled to unreduced pensions during a three-year period beginning June 11, 1999, under § 4.02 and § 2.3303(c) and/or (d) of the SKF Plan. Sections 2.3303(c) and (d) provide that service includes a "period of layoff" under certain circumstances.[2]

After a hearing was held, the plan administrator denied plaintiffs' claims. The plan administrator concluded that plaintiffs were not "laid off" when they became employees of Tyson immediately after the sale:

> The terms "layoff" and "permanent shutdown" are not defined in the Plan and, for this reason, we have accorded such terms their plain meaning. Your clients did not experience a layoff because your clients did not have any period of unemployment or interruption of wages as a result of the sale. The buyer assumed the Collective Bargaining Agreement that was in effect with respect to your clients immediately before the sale and implemented a pension plan with terms essentially identical to those of the Plan. . . .

> We have considered whether the terms "layoff" and "permanent shutdown" have a special meaning under the Collective Bargaining Agreement. . . . [T]he Collective Bargaining Agreement reflects that the term "layoff" indicates that an employee has recall rights, *i.e.*, the

---

[1] Plaintiffs state that some employees received a lower wage and lost vacation time. The district court's opinion states that this applied only to persons who retired from SKF and then were rehired by Tyson. The appendix contains a memorandum of agreement between Tyson and the AFL-CIO which supports the district court's statement.

[2] A third group of plaintiffs withdrew their claims after SKF's motion to dismiss was filed.

right to a position before other individuals may apply. We have been advised that none of your clients have recall rights with respect to any Company facility.

The plan administrator also found that there was no permanent shutdown because the Kentucky facility remained in continuous operation. Plaintiffs do not challenge the finding of no permanent shutdown.

Plaintiffs filed this action in Kentucky state court, and SKF removed the case to federal court. On June 17, 2003, the district court granted SKF's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The district court found that the sale of SKF's division to Tyson did not result in a layoff under established Sixth Circuit precedent. This appeal followed.

## II.

We use a *de novo* standard in reviewing whether a district court properly dismissed a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Pratt v. Ventas, Inc.*, 365 F.3d 514, 518-19 (6th Cir. 2004). A motion to dismiss may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* at 519 (internal quotation marks and citation omitted).

The parties agree that our review of the plan administrator's decision is limited to a determination of whether the denial of benefits was arbitrary and capricious. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (where plan administrator is given discretionary authority to construe terms of the plan, judicial review is limited to whether the decision was arbitrary and capricious). In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person. *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 934 (6th Cir. 2000). We must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants. *Ross v. Pension Plan for Hourly Employees of SKF Indus., Inc.*, 847 F.2d 329, 334 (6th Cir. 1988).

Plaintiffs rely on the definition in Black's Law Dictionary to argue that the permanent termination of their employment with SKF constituted a "layoff" under the plain and ordinary meaning of that term:

> A termination of employment at the will of employer. Such may be temporary (e.g. caused by seasonal or adverse economic conditions) or permanent.

BLACK'S LAW DICTIONARY 888 (6th Ed. 1990).[3]

The issue presented in this case, however, has already been decided in this circuit contrary to plaintiffs' position. In *Rowe v. Allied Chemical Hourly Employees' Pension Plan*, 915 F.2d 266, 269 (6th Cir. 1990), we held that the separation of employees from their original employment and immediate employment by the company purchasing the original employer's facility did not constitute a layoff. Plaintiffs attempt to limit *Rowe* by arguing that it applies only where the successor employer agrees to continue the pension plan so as not to affect the employees' pension benefits. We agree with the district court, however, that *Rowe* should not be read so narrowly. The key to that decision is that there was no interruption in the plaintiffs' employment because they immediately became employees of the purchasing company upon completion of the sale.

---

[3]The definition of layoff was revised in the Seventh Edition of Black's Law Dictionary: "The termination of employment at the employer's instigation; esp., the termination – either temporary or permanent – of a large number of employees in a short time." BLACK'S LAW DICTIONARY 896 (7th Ed. 1999).

        Moreover, we must remember that plaintiffs are not entitled to relief unless they can show that the plan administrator's decision was arbitrary and capricious. The plan administrator's interpretation of layoff is supported both by the case law and the language of the SKF Plan itself. In *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946), the Supreme Court was interpreting the term "discharge" under the Selective Training and Service Act of 1940, 50 U.S.C. § 301 (repealed 1955). In distinguishing a layoff from a discharge, the Supreme Court noted that a layoff is defined as "A period during which a workman is temporarily dismissed or allowed to leave his work; that part or season of the year during which activity in a particular business or game is partly or completely suspended; an off-season." *Id.* at 287 n.11 (internal quotation marks and citation omitted).

        The terms of the SKF Plan also support the administrator's interpretation of layoff as a temporary termination of employment. Section 4.05 states that a member is not entitled to an immediate pension if he refuses to return to work when recalled by his employer. Even though plaintiffs may have presented an equally rational interpretation of layoff, we cannot say that the plan administrator acted arbitrarily or capriciously in deciding that layoff means a temporary termination or interruption in employment. It is clear, therefore, that no relief could be granted under any set of facts that could be proved consistent with the allegations in plaintiffs' complaint, and the district court did not err in granting the motion to dismiss.

        **AFFIRMED.**