NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a1012n.06
Filed: December 23, 2005

No. 05-1036

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARIANNE ANDERSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| EMERSON ELECTRIC COMPANY and | ) | WESTERN DISTRICT OF MICHIGAN |
| EMERSON ELECTRIC COMPANY | ) | |
| RETIREMENT PLAN FOR EMPLOYEES | ) | |
| OF EMERSON TOOL COMPANY | ) | |
| REPRESENTED BY LOCAL 699 AT | ) | |
| MENOMINEE, MICHIGAN, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: CLAY and COOK, Circuit Judges; and OLIVER, District Judge.[*]

COOK, Circuit Judge.   Marianne Anderson, a former employee of Defendant Emerson

Electric Company, applied and was declared ineligible for a disability pension under Emerson's

ERISA-governed retirement plan (the "Plan").  *See* 29 U.S.C. § 1001 *et seq.*  Emerson's Retirement

Plan Claims Review Board  (the "Board") agreed with the ineligibility determination and a federal

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District
of Ohio, sitting by designation.

district court upheld the Board's decision. Anderson now appeals. Because the Board's decision was not arbitrary and capricious, we affirm the district court's decision.

## I.

During her 14-year employment with Emerson, Anderson was a Participant in Emerson's retirement plan. Under the Plan, "active Participants" who attain age 40 with at least ten years of credited service and who become disabled are entitled to a $100 per month disability pension. Anderson's employment terminated in 1995 when she became disabled. At that time Anderson had accumulated over 14 years of credited service but was only 33 years old—seven years too young to qualify for a disability pension. She sought and received disability benefits under the Social Security Act.

About eight years later, after Anderson turned 40, she contacted Emerson about receiving the $100-per-month disability pension under the Plan. A plan administrator informed Anderson she was ineligible because she did not meet the age requirement "at the time of [her] disability." Anderson appealed this determination to the Board, which agreed that Anderson was ineligible, stating: "Each of the [eligibility] conditions must be satisfied at the time the disability commences." The district court upheld the Board's denial of benefits, and Anderson filed this appeal.

## II.

No. 05-1036
*Anderson v. Emerson Electric, et al.*

This court reviews de novo the district court's ruling, applying the same legal standard as the district court. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). A district court applies the "arbitrary and capricious" standard of review to an ERISA-plan administrator's decision regarding benefits where, as here, "the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516, 527 (6th Cir. 2003).

Under the arbitrary and capricious review standard, the administrator's determination will be upheld if "it is 'rational in light of the plan's provisions.'" *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003) (quoting *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998)). Put another way, "[a] decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000). Moreover, a reviewing court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

III.

Under Plan Section 6.1, to be eligible for a disability pension Anderson must be "[a]n active Participant who shall have attained at least age 40, who has at least 10 years of Pension Credited

Service, and who becomes permanently and totally disabled, as set out in Section 6.2."[1] The dispute

here is over *when* the age requirement of Section 6.1 must be satisfied. Anderson contends she can

become "totally and permanently disabled" prior to her fortieth birthday and still qualify for a

disability pension upon reaching the required age. Emerson, on the other hand, insists the age

requirement must be satisfied before the onset of the triggering disability.

Anderson first argues Emerson's interpretation is arbitrary and capricious because it

unreasonably requires her to satisfy an unwritten eligibility requirement—attaining age 40 *before*

becoming disabled—in order to receive a disability pension. Emerson acknowledges it may not

deny benefits by imposing a condition not encompassed within the Plan documents, *see Jones v.*

*Metro. Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004) ("Discretion to interpret a plan . . . does not

include the authority to add eligibility requirements to the plan."), but contends the Plan language

already expresses the eligibility requirement in question.

The grammatical structure of Plan Section 6.1 states the age requirement as a condition

precedent to the disability requirement: "An active Participant who *shall have attained* at least age

40, . . . and who *becomes* permanently and totally disabled, . . . shall receive a [disability] pension."

(emphasis added). Use of the future perfect tense ("shall have attained") expresses the idea that one

---

[1]Plan Section 6.2, in turn, provides that a Participant is "permanently and totally disabled" only if: "a) while employed by the Employer he or she has been totally disabled by bodily injury or disease . . . and b) he is eligible for and is receiving disability benefits under the Social Security Act."

event will occur before another in the future. Emerson interprets the combination of the future perfect tense with the present tense ("becomes") to mean that to be eligible, Anderson must have attained the age of 40 before she becomes disabled.

Although Emerson's interpretation may be open to debate, under the arbitrary and capricious standard of review we uphold it if it is reasonable. Here we judge reasonableness by whether the plan administrator's interpretation adheres to the language of the plan "as it would be construed by an ordinary person." *Morgan,* 385 F.3d at 992 (citing *Shelby County Health Care,* 203 F.3d at 934). And "[w]e must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational [differing] interpretation." *Morgan,* 385 F.3d at 992 (citing *Ross v. Pension Plan for Hourly Employees of SKF Indus., Inc.*, 847 F.2d 329, 334 (6th Cir. 1988)).

Although Anderson argues that "the Plan could have included language stating that a participant must be 40 years old at the time of disability in order to qualify for benefits," she is wrong to conclude that the absence of such specificity renders the administrator's interpretation unreasonable. Anderson offers no alternative reading of Section 6.1 that would prove Emerson's reading untenable. Nor does she point to other sections of the Plan that are ignored or rendered meaningless by Emerson's interpretation.

Anderson also complains that the district court erred by upholding the Board's decision on a ground not originally offered by the Board. Specifically, she contends that the district court's sole rationale for its decision was reading the term "active Participant" to mean "a current employee of

the Company," whereas the Board's stated rationale was that the age requirement was a condition precedent to disability. Emerson correctly responds that this "new rationale" was instead only an explanation offered to defend the rationality of its denial decision. *See Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir. 1996) ("When challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality. He cannot augment the administrative record with new facts . . . , but he is not limited to repeating what he told the applicant.").

Finally, Anderson contends that interpreting the term "active Participant" to only encompass current employees renders the Plan's promise of a disability pension illusory and thus is arbitrary and capricious. Plan Section 6.1 mandates that an active Participant become "permanently and totally disabled" in order to receive a disability pension, and Plan Section 6.2 states that in order to satisfy the definition of "permanently and totally disabled," a Participant must suffer a disabling injury while employed and must also currently be receiving disability benefits under the Social Security Act ("SSDI"). As Anderson's argument goes, because one who is receiving SSDI necessarily is not employed, no Participant will ever receive a disability pension under Emerson's Plan interpretation.

Anderson's argument ignores a plain reading of the Plan's language, which does not require a Participant receive SSDI while employed in order to receive disability-pension payments, but rather creates a two-step process for determining disability-pension eligibility. The first step is to

determine whether an active Participant satisfies the disability-pension eligibility requirements, including suffering a disabling injury, *while* employed. At the second step the date SSDI payments begin sets the commencement date for disability-pension payments under the Plan. Importantly, this interpretation allows a Participant to qualify for a disability pension *after* leaving employment, so long as she meets the eligibility requirements *while* employed. The Plan's promise of a disability pension is not illusory; the Plan includes no requirement that a Participant be employed when SSDI payments commence.

## IV.

For the foregoing reasons, we affirm the district court's decision.