**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0415n.06

**No. 07-1523**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 11, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| Jane E. Gravelle, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Bank One Corporation, J.P. Morgan Chase & Company, | ) | M E M O R A N D U M |
| | | O P I N I O N |
| Defendants-Appellees. | | |

BEFORE:   MOORE and McKEAGUE, Circuit Judges; FORESTER, Senior District Judge.[*]

**McKeague, Circuit Judge**. Frederick Gravelle worked for the same employer for thirty-six years. After he died, his wife was eligible for spousal death benefits. The plan provided certain employees the option of receiving benefits calculated under the current plan or benefits vested under an earlier plan. Mrs. Gravelle and the Plan Administrator disputed the proper interpretation of the plan provisions regarding the effect of an earlier pension plan. Mrs. Gravelle filed suit in the United States District Court for the Eastern District of Michigan. The district court affirmed the administrative decision. As the Plan Administrator's interpretation is reasonably supported by the record, we affirm.

---

[*]   The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

Frederick Gravelle died on September 15, 2004, leaving his wife, Jane Gravelle, as his sole beneficiary. Mr. Gravelle was born on October 6, 1946, and he began working for the National Bank of Detroit ("NBD") on September 3, 1968. Mr. Gravelle began participating in NBD's Retirement plan on October 1, 1968. When Mr. Gravelle began working at NBD, the NBD plan was a defined benefit plan that used a final average pay formula to determine benefits.

NBD merged with First Chicago Corporation on January 1, 1997.[1] After the merger, an employee's NBD benefits were converted into a lump sum and became the starting balance in the First Chicago NBD Corporation Personal Pension Account Plan ("PPAP"). However, if an employee qualified under the "Rule of 65,"[2] the employee was recognized as a "Grandfathered FCC/NBD Employee ("Grandfathered Employee"). A Grandfathered Employee retained the right to receive the greater amount of either the benefits calculation available to all employees or the benefits calculation provided in a supplement detailing benefits for Grandfathered Employees.

Mr. Gravelle satisfied the Rule of 65.[3] In Supplement B, the PPAP provides that, for employees such as Mr. Gravelle who died after the age of fifty-five and with ten years or more of service, the death benefits would be the greater of the following:

---

[1]First Chicago/NBD later became Bank One.

[2]The Rule of 65 covered employees who, as of December 31, 1996, had completed five years of service and "the sum of his attained age plus his completed years of Service . . . equaled at least 65 on that date."

[3]As of December 31, 1996, Mr. Gravelle was fifty years old and had worked for NBD for twenty-eight years.

(i) the Spousal Death Benefit; or (ii) the benefit that would be payable to such Surviving Spouse if the Member had retired on the date preceding the date of death and had not waived the joint and 50% Surviving Spouse level annuity, or, if applicable, (iii) the benefit that would be payable to such Surviving Spouse under subparagraph (e) of this subsection 3.1.

The dispute in this appeal turns on the third option, the benefits available under subsection 3.1(e). That provision states that:

The death benefits payable to beneficiaries of Employees who were Members under the NBD Plan prior to January 1, 1976 shall be determined in accordance with this Supplement B but with reference to the death benefit provisions of the NBD Plan as in effect immediately prior to that date (hereinafter called the "Prior Plan"). In no event, however, shall any beneficiary of a Member under the Plan, whether or not such a Member was also a Member under the Prior Plan, be entitled to receive more than one death benefit under either the provisions of the Prior Plan or under the provisions of Supplement B, nor shall the death benefit payable under subparagraphs (a), (b), and (c) of this subsection 3.1 to the Surviving Spouse of a Member under the Prior Plan be less than the corresponding death benefit payable to such Surviving Spouse under the Prior Plan based on the Employee's annual rate of Compensation determined as of January 1, 1976.

The death benefits under the Prior Plan are listed in the following attachment to the current plan:

(a) If a member who has reached the 55th anniversary of his birth dies in service (excepting the case of restoration to service on or after Normal Retirement Date) and proofs of death satisfactory to the Retirement Committee, a death benefit shall be payable to the beneficiary designated to receive such death benefit payments, or, if no designated beneficiary survives, to the Member's executors or administrators.

(b) The death benefit payable to a Member's designated beneficiary shall be an annual allowance equal to the Retirement Allowance under the Plan that would have been payable to the Member if he had not died but had retired on the first day of the calendar month in which he died, or on his Normal Retirement Date, if earlier . . . .

Additionally, the current PPAP Summary Plan Description ("PPAP SPD") explains the role of benefits earned under prior plans:

> If you were a participant in a defined benefit plan that has been merged into the PPAP, your benefits will generally be calculated under the terms of the PPAP. However, you are entitled to receive under the PPAP benefits that are at least equal to the accrued benefits to which you were entitled, as of the date of the Plan merger, under the prior defined benefit plan in which you participated. The benefits available to you (and, if applicable, your beneficiaries) may be different than those described here. You would have received information about your grandfathered status at the time the prior plan became part of the PPAP.

The 1995 NBD Summary Plan Description ("NBD SPD"), in effect prior to the NBD/First Chicago merger, also indicated that:

> The Prior Plan . . . provided a survivor's benefit that was payable only if you died between the ages of 55 and 65 and while you were still employed at NBD. Under the Prior Plan, the benefit was calculated as if you had chosen to retire and had picked the 100% Joint and Survivor Option, though the amount of death benefit varied depending on whether the beneficiary you chose was your spouse. This benefit was based on your rate of pay as of January 1, 1976. If you were a member of the Prior Plan, you may choose to have your beneficiary receive the death benefit calculated under the Prior Plan or the normal death benefit applicable to you under the NBD Retirement Plan, but not both.

After Mr. Gravelle died, Bank One's Pension Plan Administrator ("Plan Administrator") sent Mrs. Gravelle a letter regarding the cash benefit option under the PPAP. Mrs. Gravelle contacted the Plan Administrator to inquire about the option for Grandfathered Employees. The Plan Administrator corrected the omission and sent Mrs. Gravelle a new explanation of her survivor benefits. After further communication, Mrs. Gravelle sent Bank One a letter requesting a 100% survivor benefit, based on Mr. Gravelle's most recent salary, under PPAP subsection 3.1(e). The Plan Administrator construed this as a claim and denied the claim. The Plan Administrator informed Mrs. Gravelle that "the NBD death benefit does not take into consideration compensation earned

after January 1, 1976." Mrs. Gravelle appealed the denial to the Appeal Committee, which then affirmed the denial of the claim.

Mrs. Gravelle filed suit in the United States District Court for the Eastern District of Michigan. Mrs. Gravelle filed a motion for summary judgment, and Bank One filed a motion to affirm the administrative decision. The district court affirmed the administrative decision. Mrs. Gravelle now appeals.

## II.

### A. Standard of Review

The district court appropriately conducted a de novo review of the administrative record before affirming the administrative decision. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The district court's decision on the record is reviewed de novo, using the same legal standard as the district court. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 164 (6th Cir. 2007).

The legal standard for review of a denial of benefits under ERISA depends on whether the plan administrator had discretion in making its determination. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the plan administrator discretion, then the administrator's decision is reviewed using the arbitrary and capricious standard. *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561 (6th Cir. 2007). An administrator's decision is not arbitrary and capricious "if it is the result of a deliberate principled reasoning process and is rational in light of the plan's provisions." *Cooper*, 486 F.3d at 165 (internal quotation marks and citation omitted). When "interpreting a plan, the administrator must adhere to the plain meaning of its language as it

would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). Nevertheless, an appellate court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Id.*

"Where a plan authorizes an administrator 'both to decide whether an employee is eligible for benefits and to pay those benefits,' it creates 'an apparent conflict of interest.'" *Cooper*, 486 F.3d at 165 (quoting *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006)). This conflict is a relevant factor in assessing whether the administrator's decision was arbitrary and capricious. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008). How that factor affects review of an administrator's decision varies on a case-by-case basis. *Id.* at 2351. "[W]here circumstances suggest a higher likelihood that [the conflict] affected the benefits decision," the court should give greater weight to the conflict. *Id.*

**B. Interpretation of the Plan**

The PPAP gives the Plan Administrator discretion. Under the PPAP, the Administrator has "the full power and authority . . . . [t]o determine, in its sole discretion, all questions concerning the construction and interpretation of the Plan and its administration." This language is sufficient to establish that the arbitrary and capricious standard of review applies. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir. 2000).

The relevant provision of the PPAP is subsection 3.1(e), as, under subsection 3.1(c)(iii), the spouses of Grandfathered Employees may choose to receive "the benefit that would be payable to such Surviving Spouse under subparagraph (e) of this subsection 3.1." Subsection 3.1(e), however, does not clearly state what that benefit should be. Instead, it states that the benefit shall be calculated

"with reference to" the Prior Plan and that the beneficiary shall not receive multiple benefits and shall not receive less than the beneficiary would have received based on the employee's compensation on January 1, 1976. The Plan Administrator interpreted these provisions to mean that the PPAP referenced the Prior Plan by providing the spouse of a Grandfathered Employee with a death benefit calculated under the Prior Plan using the Grandfathered Employee's annual rate of compensation as of January 1, 1976.

The Plan Administrator's interpretation is not arbitrary and capricious. Subsection 3.1(e) is ambiguous with regard to the substance of the benefit it provides. The first sentence indicates that the benefit is calculated under Supplement B but "with reference to" the Prior Plan. The death benefits provisions of the Prior Plan are attached at Appendix B-1, but they do not provide a method of calculating a benefit. Instead, Appendix B-1 states that "a death benefit shall be payable to the beneficiary" if the employee "who has reached the 55th anniversary of his birth dies in service . . . and proofs of death . . . are filed with the Retirement Committee." The amount of the benefit under the Prior Plan "shall be an annual allowance equal to the Retirement Allowance under the Plan that would have been payable to the Member if he had not died, but had retired on the first day of the calendar month in which he died . . . ." Appendix B-1 does not contain the relevant provisions of the Prior Plan for determining the Retirement Allowance. Instead, the ambiguity in the first sentence of subsection 3.1(e) remains unresolved.

The Summary Plan Descriptions ("SPDs") in the record provide a basis for resolving this ambiguity. Where pension plans are ambiguous, SPDs can be used to resolve the ambiguity. *See Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 301-302 (6th Cir. 2006) ("[O]ur case law

instructs us to read the SPD and the Plan documents together as an integrated whole when there is no conflicting language."). The Plan Administrator relied on the 1995 NBD SPD, which provided a clear explanation of the benefit. That SPD states that, under the Prior Plan, "the benefit was calculated as if you had chosen to retire and had picked the 100% Joint and Survivor Option . . . . This benefit was based on your rate of pay as of January 1, 1976."

This information supports the Plan Administrator's interpretation. *See Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 301-02 (6th Cir. 2006). It provides a reasonable basis to interpret the "with reference to" language in subsection 3.1(e) as referring to the ability to choose to receive a 100% death benefit based on the decedent's compensation as of January 1, 1976. As the PPAP language is ambiguous and the SPD provides a reasonable basis for the Plan Administrator's interpretation, that interpretation is not arbitrary and capricious.[4]

---

[4]In supplemental briefing after oral argument, Mrs. Gravelle asserts that the Plan Administrator erred in relying on the NBD SPD rather than the current PPAP SPD. However, the current SPD also supports the Plan Administrator's interpretation. The current PPAP SPD states that:

> If you were a participant in a defined benefit plan that has been merged into the PPAP, your benefits will generally be calculated under the terms of the PPAP. However, you are entitled to receive under the PPAP benefits that are at least equal to the accrued benefits to which you were entitled, as of the date of the Plan merger, under the prior defined benefit plan in which you participated.

This is directly in line with the Plan Administrator's interpretation. It indicates that the benefit will be calculated under the terms of the PPAP and that the reference to the Prior Plan is intended to ensure that the benefit is at least equal to the date of the employee's accrued benefits under the Prior Plan. Further, it explains that the amount of accrued benefits is determined as of the date the prior plan was merged into the PPAP. Therefore, the current PPAP SPD, like the NBD SPD, supports the Plan Administrator's interpretation.

Mrs. Gravelle argues that the NBD SPD contradicts the plain language of the PPAP itself and that the NBD SPD therefore should not receive any weight. However, the NBD SPD and the text of the PPAP do not contradict each other. The PPAP text indicates that death benefits shall be determined with reference to the Prior Plan–but the text does not indicate how to reference the Prior Plan. The SPDs provide an explanation for how to reference the Prior Plan. Nothing in the PPAP text contradicts that explanation.

As the Plan Administrator both evaluates and pays claims, there is a conflict of interest. *See Metro. Life Ins.*, 128 S. Ct. at 2348. We take this into account as a factor in our analysis. However, there are no circumstances present in this case that indicate the need to give greater weight to the conflict. *See id.* at 2351; *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009). Nor is there a provision in either the PPAP or the SPDs that supports a contrary interpretation of the Plan.[5] Therefore, while we account for the conflict of interest, it does not change the result in this case.

**III.**

---

[5]There is a grammatical argument that cuts against the Plan Administrator's interpretation. The second sentence of subsection 3.1(e) begins "In no event, however, shall . . . the death benefit . . . be less than the corresponding death benefit payable to such Surviving Spouse under the Prior Plan based on the Employee's annual rate of Compensation determined as of January 1, 1976." The beginning of the sentence suggests that it is a limitation on the first sentence and that the first sentence somehow indicates how the benefit should be calculated.

This argument, however, is ultimately unpersuasive. It merely highlights the ambiguity in the subsection; it does not provide a basis for adopting any alternative interpretation. Further, it is not supported by any reference in the PPAP or the SPD to a method of calculating the benefit that differs from the method adopted by the Plan Administrator.

In the absence of any conflicting language, the SPDs provide a reasonable basis for the Plan Administrator's interpretation of the Plan. Therefore, the Plan Administrator's decision was not arbitrary and capricious, and we **AFFIRM** the decision of the district court.