McKEAGUE, Circuit Judge,
dissenting.
Although we review the plan administrator’s decision under the arbitrary and capricious standard, I also would “adhere to the plain meaning of [the Plan’s] language as it would be construed by an ordinary person,” Morgan v. SKF USA, Inc., 385 F.3d 989, 992 (6th Cir.2004), and give “effect to the unambiguous terms of an ERISA plan.” Williams v. Int’l Paper Co., 227 F.3d 706, 711 (6th Cir.2000) (citations omitted). However, unlike the majority, I believe that the language in the LTD Benefit Booklet and the LTD Benefit Program unambiguously supports plan administrator Anthem’s decision to deny plaintiff-appellee Ruth Mitzel long-term disability benefits. Consequently, I would reverse the district court.
During the first twelve months of coverage, the long-term disability plan (“the Plan”) provides a look-back period for the three months preceding the Plan’s effective date of coverage. If a preexisting condition (a condition arising during this look-back period) is found, then participants are not eligible for disability benefits. Thus, the definition of pre-existing condition is central to this case. The LTD Benefit Booklet defines a pre-existing con *85 dition as, “a sickness or injury for which you received medical care or services (including doctor visits, prescriptions and diagnostic tests) during the three months prior to your effective date of coverage.” (AR 350.) The LTD Benefit Program further states that a “[p]re-existing condition is a sickness or injury: for which you received treatment; OR where symptoms were present to the degree that an ordinarily prudent person would seek treatment.” (AR 404) (emphasis removed and formatting changed from the original). The LTD Benefit Program defines “treatment” to “includ[e]”: “[1] consulting with a doctor [2] receiving care or services from a doctor or from other medical professionals a doctor recommends you see ... [3] receiving diagnostic measures.” (AR 404-405) (emphasis removed and formatting changed from the original).
The difficulty in this case arises because Mitzel developed symptoms of Wegener’s granulomatosis (“WG”) in 2003. The effective date of her long-term disability coverage was June 13, 2004, so the look-back period ran from March 13, 2004 to June 13, 2004. Mitzel was hospitalized on June 3, 2004, but not diagnosed with WG until June 18, 2004, five days after her effective date of coverage. In deciding whether her claim was for a pre-existing condition, Anthem relied on the expert analysis of Dr. Ronald J. Bloomfield. Dr. Bloomfield found that Mitzel had WG before October 2003, showed the symptoms of WG by October 2003, and had medical visits to investigate the symptoms of WG during the look-back period. Furthermore, Mitzel received repeated diagnostic tests and diagnostic measures during the pre-existing period for the condition later determined to be WG and its symptoms. (AR 36).
In analyzing the applicable language in the LTD Benefit Booklet, the majority focuses on the “for which” language, building off earlier decisions in the Third Circuit. See Lawson ex rel. Lawson v. Fortis Ins. Co., 301 F.3d 159, 165 (3d Cir.2002); McLeod v. Hartford Life & Accident Ins. Co., 372 F.3d 618, 625-26 (3d Cir.2004) (relying on Lawson). The Lawson and McLeod courts adopted a definition of “for” that “connotes intent” or is “ ‘used as a function word to indicate purpose.’ ” Lawson, 301 F.3d at 165 (citing Webster’s Ninth New Collegiate Dictionary 481 (1986)). These Third Circuit opinions then interpreted this language to require that the medical care provided must have been intended to treat the claimant’s diagnosed or suspected sickness. Put another way, the Third Circuit interpreted the “for which” language to require that the doctor or the patient diagnosed or suspected during the pre-existing period that the patient had the specific sickness that the patient was ultimately diagnosed with and that treatment was intended for that specific diagnosed or suspected sickness.
However, neither the definition of sickness nor the types of medical care or treatment specified by the Plan require that the doctor or the patient correctly diagnose or even suspect during the preexisting period the actual sickness that is ultimately diagnosed. First, as stated in the Plan’s language, the medical care is not provided “for” a diagnosed or suspected sickness, it is simply provided for a “sickness,” without any initial modifiers. The definition of sickness is broad:
1 a: the condition of being ill: ill health: illness b: a disordered, weakened, or unsound condition
2: a form of disease: malady
Webster’s Third New International Dictionary, Unabridged (2002) available at http://unabridged.merriam-webster.com (1 Oct. 2009). A sick person has the condition of being ill, a form of disease, ill health, or a weakened, disordered, or un *86 sound condition even if neither the doctor nor the patient diagnosed or suspected the actual sickness that the patient was ultimately diagnosed with. In this case, there is no dispute that Mitzel was sick with WG during the pre-existing period, even though neither she nor her doctors diagnosed or suspected that she had WG during the pre-existing period.
Furthermore, the remaining language in the Plan confirms that the Plan does not require that the sickness be diagnosed or suspected by the doctor or the patient during the pre-existing period. The LTD Benefit Booklet defines pre-existing condition to include “a sickness ... for which you received medical care or services (doctor visits, prescriptions and diagnostic tests).” A patient can have doctors visits for a sickness, even though neither the patient nor the doctor correctly diagnosed or suspected the sickness at the time. Moreover, a patient can have diagnostic tests for a sickness, even though neither the patient nor the doctor suspected or correctly diagnosed the sickness at the time. See LoCoco v. Medical Savings Ins. Co., 530 F.3d 442, 447 (6th Cir.2008) (“Logically, a party does not receive a diagnostic conclusion until after actually undergoing some kind of diagnostic process.”). Similarly, the LTD Benefit Program defines “treatment” (a term synonymous with medical care or services) to include consulting with a doctor, receiving care or services from a doctor or from other medical professionals a doctor recommends you see, or receiving diagnostic measures. None of these types of treatment require a correct diagnosis of the disease at the time the treatment is provided; in fact, they do not even require that the disease be suspected at the time the treatment is provided. Instead, they all envision treatment of an undiagnosed or unsuspected sickness, presumably as part of a process of reaching a correct diagnosis.
This language makes it clear that the Plan does not require that the doctor or the patient diagnose or suspect during the pre-existing period that the patient has the specific underlying sickness that is ultimately diagnosed. Rather, the Plan requires that, during the pre-existing period, the patient had an underlying sickness and that he or she received one of the types of medical care or treatment specified in the Plan’s documents for that sickness. Consequently, the “for which” language in the Plan does not require that the doctor intend to provide treatment for a specific diagnosed or suspected sickness. Instead, it requires that the patient receive medical care or treatment “because of’ the underlying sickness, regardless of whether that sickness is diagnosed or suspected. Indeed, this is in keeping with the definition of for. Webster’s Third New International Dictionary, Unabridged (2002), available at http://unabridged.merriam-webster. com (13 Oct. 2009) (noting that “for” means “8 a: because of’).
In this case, Dr. Bloomfield’s report stated that Mitzel “became ill in October 2003 with Wegner’s” and that she had “multiple” medical visits and examinations during the pre-existing period for “symptoms which were eventually diagnosed as Wegner’s.” (AR 93). Consequently, Mit-zel had a sickness (WG) during the preexisting period and she received medical care and treatment as defined under the plan (doctor visits, diagnostic tests, and diagnostic measures) because of or for that sickness. The fact that Mitzel and her doctors did not suspect or correctly diagnose the specific sickness that she had (WG) during the pre-existing period is not relevant because the Plan’s language simply does not require the doctors (or Mitzel) to diagnose or suspect the actual sickness that they were providing treatment for during the pre-existing period. To rede *87 fine the Plan to require knowledge or suspicion of the specific sickness that the patient is seeking treatment for is to redefine the plain words of the Plan — to add additional requirements to the Plan. Since I am unwilling to do this, I would reverse the district court and uphold Anthem’s denial of benefits.